337 A.2d 844

The AMERICAN TELEPHONE AND TELE-
GRAPH COMPANY, Appellant,

v.

BOARD OF PROPERTY ASSESSMENT, APPEALS AND
REVIEW OF ALLEGHENY COUNTY,
Pennsylvania.

BOARD OF PROPERTY ASSESSMENT, APPEALS AND
REVIEW OF ALLEGHENY COUNTY, Pennsylvania,
and County of Allegheny

v.

The AMERICAN TELEPHONE AND TELE-
GRAPH COMPANY, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 9, 1974.

Decided May 13, 1975.

———◆———

Albert J. Tomalis, Jr., Metzger, Hafer, Keefer, Thomas & Wood, Harrisburg, for appellant; James H. Peters, Chief Tax Atty., Robert L. Nathanson, Tax Atty., New York City, of counsel.

Thomas M. Rutter, Jr., Acting County Sol., John G. Arch, Asst. County Sol., Stephen A. Zappala, County Sol., Pittsburgh, for appellee.

Samuel C. Harry, Harrisburg, for amici curiae, the Pennsylvania Members of the Nat. Ass'n of Water Companies; Morgan, Lewis & Bockius, Harrisburg, of counsel.

Frank A. Sinon, Walter K. Swartzkoph, Jr., Rhoads, Sinon & Reader, Harrisburg, for amicus curiae, Columbia Gas Transmission Corp.; Thomas E. Morgan, Larry L. Roller, Charleston, W. Va., of counsel.

Gilbert Nurick, Harrisburg, Robert R. Batt, Louis W. Ricker, Philadelphia, for amici curiae, Cleveland Elec. Illuminating Co., Ohio Edison Co., and Toledo Edison Co.; McHees, Wallace & Nurick, Harrisburg, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, of counsel.

Robert R. Batt, Louis W. Ricker, Philadelphia, Harry J. Rubin, Harrisburg, for amici curiae, Atlantic City Elec. Co., Baltimore Gas & Elec. Co., Delmarva Power & Light Co., Jersey Cent. Power & Light Co., Potomac Elec. Power Co., and Public Serv. Elec. & Gas Co.; Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Krekstein, Rubin & Lasday, Harrisburg, of counsel.

Gordon W. Gerber, William A. Kelley, Jr., Alfred A. Gollatz, Dechert, Price & Rhoads, Philadelphia, amici curiae for Western Pennsylvania Water Co., Keystone Water Co. and Riverton Consolidated Water Co.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from an order of the Commonwealth Court [1] holding that a public utility's payment of the tax

---

1. American Telephone and Telegraph Co.'s appeal in the Commonwealth Court was heard in conjunction with the appeals of three other utilities. See note 17, infra. *Duquesne Light Co. v. Board of Property Assessment*, 10 Pa.Cmwlth. 41, 299 A.2d 660, aff'd on rehearing, 10 Pa.Cmwlth. 60, 309 A.2d 193 (1973). Following the Commonwealth Court's decision on hearing, AT&T sought and was granted on appeal to this Court. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1974).

imposed by the Public Utility Realty Tax Act [2] (PUR-TA) was not in lieu of local real estate taxes pursuant to article VIII, section 4 of the Pennsylvania Constitution, P.S.[3] We conclude that the Commonwealth Court erroneously construed article VIII, section 4 and reverse.

This case requires analysis of the interaction of article VIII, section 4 and PURTA. A clearer understanding of the issues presented will be facilitated by a review of the history of these two provisions. This then is the beginning of our consideration.

## I.

From 1826, when this Court decided *Schuylkill Bridge Co. v. Frailey,* 13 S. & R. 422 (Pa.1826), until 1968, when article VIII, section 4 was added to the Pennsyl-

2. Public Utility Realty Tax Act, Act of March 10, 1970, P.L. 168, No. 66, § 1 et seq., 72 P.S. § 3271 et seq. (Supp.1974). PUR-TA is also popularly referred to as Act 66.

3. Pa.Const. art. VIII, § 4 provides:
"The real property of public utilities is subject to real estate taxes imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided shall, however, be in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service. The amount raised annually by such gross receipts or other special taxes shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided. This gross amount shall be determined in the manner provided by law. An amount equivalent to such real estate taxes shall be distributed annually among all local taxing authorities in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of all local taxing authorities, or in such other equitable proportions as may be provided by law.
"Notwithstanding the provisions of this section, any law which presently subjects real property of public utilities to local real estate taxation by local taxing authorities shall remain in full force and effect.
*Schedule*
"Section four shall take effect July 1, 1970, unless the General Assembly earlier provides enabling legislation in accordance therewith."

vania Constitution, the imposition of local real estate taxes upon the property of public utilities essential to the utilities' operation [4] was prohibited unless an act of the General Assembly permitted local taxation.[5] During the 142 years between *Schuylkill Bridge Co.* and the convening of the Pennsylvania Constitutional Convention of 1967–68, the Legislature enacted no law generally permitting local taxation of public utilities' real estate.

The inability of local taxing authorities to tax the real estate of public utilities within their geographical area was a cause of great concern to local authorities and their taxpayers. The exemption was considered a means by which a potential source of revenue escaped local taxation. Furthermore, local authorities asserted that the presence of a major utility in their territory tended to reduce the base upon which property taxes could be assessed.[6]

This concern was manifested at the Constitutional Convention. When the Convention convened, the question of local taxation of the real estate of public utilities was submitted by the Preparatory Committee to the Committee on State Taxation and Finance with the following official guidance:

"If the continuation of the exemption for property of public utilities is desired, it may be advised to strengthen the Constitutional basis for this exemption by adding a provision to Section 1 of Article IX [7] au-

---

4. See, e. g., *Independence Twp. School Dist. Appeal,* 412 Pa. 302, 309, 194 A.2d 437, 440 (1963).

5. For a discussion of the history of the exemption, see Comment, Exemption of Real Property of Public Utilities from Local Taxation in Pennsylvania, 13 U.Pitt.L.Rev. 263 (1952).

6. See, e. g., 2 Debates of the Pennsylvania Constitutional Convention of 1967–68, at 689 (1969) [hereinafter cited as Debates] (remarks of Delegate Hocker).

7. Prior to the adoption of the 1968 constitutional amendments, the taxation article was numbered article IX. The amendments renumbered it article VIII.

thorizing the Legislature to exempt such property. If on the other hand, the abolishment [sic] of the exemption for property of public utilities is desired, consideration should be given to adding to the Constitution (perhaps to Section 2) a clause providing that such property shall not be exempt from taxation."

Preparatory Committee, Taxation & State Finance, Reference Manual No. 7, at 12 (1967). See Comment, Public Utility Taxation in Pennsylvania: Article VIII, Section 4 of the Constitution of Pennsylvania 1968, 74 Dick. L.Rev. 274 (1970).

When the Committee on Taxation and State Finance presented its proposal to the Convention, the Committee had already resolved that local taxing authorities should be entitled to receive some revenue from public utilities. However, the Committee viewed the imposition of real property taxes directly by the local authorities as undesirable. In its view, local taxation would permit those governmental units in which public utilities were located to reap windfall benefits while other communities would obtain little or no benefit from local taxation. The increased taxation, however, would become part of the utilities' rate bases and accordingly would be reflected in every consumer's rates regardless of whether he lived in a community benefiting from the tax.[8] It therefore included in its proposal to eliminate the exemption a plan whereby all local taxing authorities could share in the revenue derived from the utilities. As finally adopted by the Convention, this plan provides that if the Legislature imposes upon utilities "gross receipts taxes or other special tax in replacement of gross receipts taxes" producing revenue equal to the sum that all local taxing authorities would collect if they imposed the local real estate taxes upon the utilities, and if the Commonwealth pro-

---

8. 1 Debates 429 (remarks of Delegate Woodring, co-chairman of the Committee on Taxation & State Finance).

portionately redistributed the revenues thus obtained to the local taxing authorities, payment of the state tax would be in lieu of payment of the local property taxes.[9] This proposal was approved by the Convention and ratified by the voters.

At the time of the adoption of article VIII, section 4, a gross receipts tax on the "wholly" intrastate activities of public utilities already existed.[10] However, certain utilities, most notably water companies, were not subject to the tax, and other utilities such as American Telephone and Telegraph Co. were exempt in whole or in part because they conducted interstate activities.[11] Moreover, the revenues derived from the tax were inadequate to meet the requirements of article VIII, section 4 and existing law made no provision for distribution of such revenues to the local authorities. For these reasons, additional legislation was required to implement the terms of the new constitutional provision.

Rather than attempt to expand the existing gross receipts tax,[12] the Legislature decided to enact a different type of tax to implement the amendment. On March 10, 1970,[13] the Legislature enacted PURTA, which imposed a

9. Pa.Const. art. VIII, § 4. See note 3 supra.

10. Act of June 1, 1889, P.L. 420, § 23, as amended, repealed by Act of March 4, 1971, P.L. 6, art. XI, § 1103 and reenacted by id. § 1101, 72 P.S. § 8101 (Supp.1974), with some modifications.

11. Interstate activities of utilities were apparently exempted to avoid conflict with the commerce clause of the federal Constitution. U.S.Const. art. I, § 8. See *Philadelphia & S. M. S. S. Co. v. Pennsylvania*, 122 U.S. 326, 7 S.Ct. 1118, 30 L.Ed. 1200 (1887).

12. Some of the concerns that may have made expansion of the gross receipts tax appear unwise to the General Assembly were the difficulties presented in avoiding federal constitutional problems in taxing the gross receipts of utilities conducting interstate activities, see n. 11 supra, and the disparity of the ratios of property values to operating revenues among utilities. See Joint State Gov't Comm'n, Taxation of Public Utilities 16 (1970).

13. The Commonwealth Court has held that the Legislature met the constitutionally imposed deadline in the schedule appended to the provision. See note 19 infra.

state-wide property tax upon the "depreciated value" [14] of the real estate of public utilities. By enacting the tax, the General Assembly intended to implement the Constitutional provision. Section 4 of the Act [15] provides in part:

"(a) Payment of the tax imposed by section 3, and the distribution to local taxing authorities prescribed by section 7 [of PURTA], shall be in lieu of local taxes upon utility realty, as contemplated by article VIII, section 4, of the Constitution of Pennsylvania."

## II.

Following the adoption of article VIII, section 4 and the enactment of PURTA, American Telephone and Telegraph Co. paid the tax imposed by PURTA for 1970 and 1971. Nevertheless, the Board of Property Assessment of Allegheny County assessed AT&T's local real estate essential to its operation [16] as taxable property. AT&T appealed the decision of the Board to the court of common pleas.[17] That court decided that AT&T was subject to the local tax for the six month period from July 1, 1970, to December 31, 1970, because the Commonwealth had failed to provide for the distribution of revenues collected by it for that period as required by the Constitution. However, the court also held that AT&T was relieved from liability for local real estate taxes for 1971 and succeeding years in which the Commonwealth made distribution of revenues to local taxing authorities as provided by article VIII, section 4 and PURTA.

14. See PURTA § 3(a), 72 P.S. § 3273(a) (1974). See also id. § 2(d), 72 P.S. § 3272(d) (Supp.1974).

15. Id. § 4, 72 P.S. § 3274 (Supp.1974).

16. See note 4 supra and accompanying text.

17. AT&T's appeal to the court of common (Supp.1974). See also id. § 2(d), 72 P.S. § 3272(d) (Supp.1974).

All parties appealed to the Commonwealth Court.[18] That court, relying on its decision in *Heller v. Depuy*, 2 Pa.Cmwlth. 196, 277 A.2d 849 (1971), concluded that AT&T's payment of the tax imposed by PURTA was not sufficient to discharge liability for local taxation.[19]

The Commonwealth Court's decision was based on its interpretation of the language of the Constitutional provision and PURTA. Article VIII, section 4 provides that "[p]ayment to the Commonwealth of gross receipts taxes or other special taxes *in replacement* of gross receipts taxes by a public utility" (emphasis added) is in lieu of payment of local property taxes. Section 8 of PURTA [20] provides that "It is the legislative intent that the tax imposed by this act . . . shall not be construed in any manner as to constitute a *replacement* for or a repealer of the [gross receipts tax]." (Emphasis added.) The Commonwealth Court concluded that because by PUR-TA's terms, the tax imposed did not "replace" the gross receipts tax and, apparently, because the Legislature had subsequently reenacted the gross receipts tax,[21] payment of the PURTA tax was not payment of "special taxes in

18. The utilities appealed from the trial court's conclusion that they were subject to local taxation for the last half of 1970. The Board of Property Assessment appealed from the court's holding that payment of the PURTA tax was in lieu of local property taxes.

19. The Commonwealth Court held that because the other utilities had paid the gross receipts tax they were not subject to property taxes. It also held that under PURTA, adequate provision was made for the distribution to the local taxing authorities for the last half of 1970. It therefore reversed the holding of the common pleas court on this issue. The Board sought an appeal to this Court on these parts of the Commonwealth Court's decision but we refused to grant the appeal on March 29, 1973.

20. PURTA § 8, 72 P.S. § 3278 (Supp.1974):
"It is the legislative intent that the tax imposed by this act shall be in addition to any tax now or hereinafter imposed upon the gross receipts of public utilities under the Act of June 1, 1889 (P.L. 420), and this act shall not be construed in any manner as to constitute a replacement for or a repealer of the above cited act."

21. See note 10 supra and accompanying text.

replacement of gross receipt taxes." Therefore that court held that the Legislature's declaration in section 4 of PURTA that payment of the PURTA tax should be considered "in lieu of local [property] taxes" [22] was "unconstitutional" as inconsistent with article VIII, section 4. Our review of the history and purposes of this constitutional provision persuades us that the Commonwealth Court erroneously construed the phrase "other special taxes in replacement of gross receipts taxes" in the constitutional provision.

## III.

As we indicated in Part I, the purpose of article VIII, section 4 was to obtain some tax revenues for local taxing authorities from taxes imposed upon public utilities. The Convention, believing local taxation would create certain inequities, agreed that the taxation, collection, and distribution of such revenues should be assigned to the Commonwealth. The manner in which the Commonwealth chose to impose the tax and collect the revenue was apparently a matter of relatively little significance to the Convention and was left to the Legislature.

The proceedings of the Convention support the conclusion that the Convention was in no sense enamored of the gross receipts tax. The initial proposal submitted by the Taxation Subcommittee to the Committee on State Taxation and Finance provided for the imposition of a state-wide real estate tax on public utilities as the source of the revenues to be distributed to the local taxing authorities.[23] However, upon further consideration by the Committee, the proposal was altered to provide for the collection of the revenue by means of the gross receipts tax. Thus, when the proposal was submitted to

22. Id. § 4, 72 P.S. § 3274 (Supp.1974). See text accompanying notes 12–15 supra.

23. 1 Debates 429 (remarks of Delegate Woodring).

the Convention, it provided that "gross receipts taxes
. . . shall be in lieu of local taxes. . . ." [24]
The Committee's reasons for this change were strictly
administrative: because the gross receipts tax already
existed, implementation of the amendment would not re-
quire the creation of new machinery to collect the tax.[25]

On second consideration of the proposal by the Con-
vention as a whole, the proposal was amended to read
"payment of gross receipts or any other special tax." [26]
This amendment was made in recognition that at some
time in the future, the Legislature might decide that a
different tax would be preferable to the gross receipts
tax.[27] The purpose of this amendment was obviously to

24. Id.

25. Id. at 429 (remarks of Delegate Woodring). Id. at 630:
"Delegate Pott [co-chairman of Committee on Taxation].

. . . . . . . . . .

"Consideration was given to a state realty tax with distribu-
tion of the proceeds to the local districts. We did not favor
this particularly, partly because it would have involved much
red tape, many additional state employees to administer it,
probably the establishment of a separate new department with-
in the Commonwealth. Also, it would have increased the ad-
ministrative cost of the utilities and, hence, raise cost to their
consumers, and partly because we feel there is a much better
way at hand."

26. Id. at 612.

27. 2 Debates 705.
"Delegate Goldman. Mr. President, I would like to ask Chair-
man Woodring what he means by the words 'or any other spe-
cial tax?'
"Delegate Woodring. [Chairman of the Subcommittee on Taxa-
tion]. Mr. President, we endeavored to state our position on
this last Friday morning during the interrogation and again this
morning. So long as the legislature continues to impose a
gross receipts tax, we would not need any other words, but we
cannot envision in this Convention today what is going to hap-
pen in the future.
"Therefore we added 'or any other special tax' as a catchall
in case the gross receipts tax would come to be known by
some other name or might be repealed or *some other tax sub-
stituted,* and so forth. We thought it was desirable to put
something there to protect the municipalities against some leg-
islative change which we are not now able to contemplate.

. . . . . . . . . .

give the General Assembly more flexibility in choosing the manner in which the Commonwealth would obtain the revenue to be distributed to the local taxing authorities. The Convention did, however, insist that any alternative tax be a "special" one, that is a tax specifically designed to implement article VIII, section 4 so as not to adversely affect the Commonwealth's general revenues.[28]

The final draft of this part of the amendment substituted the words "gross receipts taxes or other special taxes replacing gross receipts taxes" for "gross receipts or other special taxes." This change was apparently made by the Committee on Style and Drafting.[29] That this revision reflected no substantive change is indicated by the subsequent debates which clearly indicate that the Convention still intended by the provision to preserve in the Legislature the power to utilize a tax other than the gross receipts tax for the purpose of this amendment.[30]

## IV.

The utilization of such an alternative tax is exactly what the Legislature accomplished by the enactment of PURTA. Clearly, the Legislature intended that the

"The gross receipts tax *or any other special tax* may be distributed in lieu of the collection of those local taxes." (emphasis added.)

An amendment to the proposal which would have returned the phrase "gross receipts or any other special taxes" to its form as originally proposed, "gross receipts tax," was defeated by the Convention by a vote of four in favor of the amendment to 129 opposed. Id. at 703–04.

28. Id. at 705.

"Delegate Goldman. You do not anticipate that, by court interpretation, [the phrase 'or other special tax' would be construed as] meaning corporate net income taxes, corporate franchise taxes?

"Delegate Woodring. No, it is the intent of the committee that those are regular taxes and no [sic] special taxes."

See also 1 Debates 630–33 (remarks of Delegate Casey).

29. 2 Debates 1308–11.

30. Id. at 1325 (remarks of Delegate Woodring).

PURTA tax should "replace" the gross receipts tax as the source of revenue under article VIII, section 4. The tax imposed by PURTA is the sole source of revenue for distribution to local taxing authorities pursuant to article VIII, section 4 and PURTA.[31] Furthermore, because the new tax is designed exclusively for this purpose and therefore will not affect the Commonwealth's general revenues, it is a "special tax" as contemplated in the Constitution.[32] Thus by the enactment of PURTA the Legislature was merely doing what the Convention foresaw it might—replacing the gross receipts tax with another special tax to provide revenue for article VIII, section 4 distribution. The imposition of the PURTA tax fully conforms with the constitutional provision.

That the Legislature decided to retain the gross receipts tax as a source of general revenue for the Commonwealth does not affect this conclusion. The Constitution's use of "replacement" in the new provision does not mean that so long as a gross receipts tax exists no other tax may be employed for article VIII, section 4 purposes. Any other construction of "other special taxes in replacement of gross receipts taxes" would assign a magical significance to the gross receipts tax not mandated by the Constitution. The objective of the constitu-

---

**31.** PURTA § 4, 72 P.S. § 3274 (Supp.1974) provides in part:
"(b) If in any calendar year [the total amount of taxes which local taxing authorities could have imposed] shall exceed the total amount of tax collected pursuant to [PURTA], the department shall determine the ratio which the amount of such excess bears to the total state taxable value of all utility realty reported to it pursuant to section 3(b). The department shall notify each reporting public utility of such ratio, and it shall be the duty of such public utility, within forty-five days thereafter, to pay to the state treasurer, through the Department of Revenue, an additional amount of tax equal to the product of (1) such ratio and (2) the state taxable value shown in its report required by section 3(b). . . . "

**32.** The conclusion that PURTA is a "special tax" is consistent with the Legislature's intent. The full title of PURTA begins "An Act imposing a special tax upon realty of public utilities . . . .."

tional amendment is accomplished if these words are construed to mean any special tax the Legislature imposes for article VII, section 4 purposes.

We therefore conclude that the Legislature's expression in section 8 of PURTA [33] that the tax not be interpreted to "replace" the gross receipts tax and its subsequent reenactment of the gross receipts tax [34] do not render PURTA in any sense irreconcilable with article VIII, section 4. Section 8 was included in PURTA to assure that it would not be interpreted as impliedly repealing the gross receipts tax and thereby adversely affecting this source of general Commonwealth revenues. Thus the PURTA tax is a special tax imposed specially for purposes of article VIII, section 4. Payment of that tax by a utility and distribution by the Commonwealth to local taxing authorities is in lieu of local real estate taxation.

The American Telephone and Telegraph Co. is subject to the tax imposed by PURTA and, having paid that tax, is not also subject to local taxation of its operating realty. Accordingly, the order of the Commonwealth Court is reversed.

**33.** PURTA § 8, 72 P.S. § 3278 (Supp.1974).

**34.** See notes 10 & 21 supra and accompanying text.