364 A.2d 292

**SOUTHEAST DELCO SCHOOL DISTRICT,
Appellant,**

v.

**Milton SHAPP, Governor of the Commonwealth
of Pennsylvania, et al.**

Supreme Court of Pennsylvania.

Argued March 30, 1976.

Decided Oct. 8, 1976.

Peter J. Nolan, Chester, for appellant.

Melvin R. Shuster, Deputy Atty. Gen., Harrisburg, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

POMEROY, Justice.

This suit in equity was brought in the Commonwealth Court [1] by the appellant, the Southeast Delco School District, on behalf of itself and all other similarly situated local taxing authorities, to compel distribution by the Commonwealth to them of up to eighty million dollars collected in the years 1970 to 1974, inclusively, pursuant to the Public Utility Realty Tax Act, Act of March 10, 1970, P.L. 168, as amended, 72 P.S. § 3271 et seq. [hereinafter "PURTA"]. The defendants, various Commonwealth officials, filed preliminary objections in the nature of a demurrer and asserting that the Commonwealth Court lacked jurisdiction and that appellant's claim was barred by laches. The Commonwealth Court sustained the demurrer and dismissed appellant's complaint. 18 Pa.Cmwlth. 389, 336 A.2d 656 (1975). This appeal followed.[2] We shall affirm.

The public utility realty tax—a tax of thirty mills upon each dollar of the state taxable value [3] of public

1. The Commonwealth Court had original jurisdiction of this action by virtue of Section 401(a)(1) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. IV, § 401(a)(1), 17 P.S. § 211.401(a)(1) (Supp.1976).

2. Jurisdiction of this appeal is in this Court by virtue of Section 203 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 203, 17 P.S. § 211.203 (Supp. 1976).

3. The "state taxable value" of utility realty is a defined term meaning generally "the cost of utility realty, less reserves for depreciation and depletion, as shown by the books of account of a

utility real estate—was imposed by the General Assembly pursuant to Article VIII, Section 4, of the Constitution of Pennsylvania [4] as a special tax in place of local taxation of public utility real estate.[5] Appellant's complaint alleges that during the years 1970 through 1974

public utility . . . ." § 2(d) of PURTA, 72 P.S. § 3272(d) (Supp.1976).

4. Article VIII, Section 4, adopted by the Constitutional Convention of 1967–68 on February 28, 1968, and approved by the voters on April 23, 1968, provides:

"The real property of public utilities is subject to real estate taxes imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided shall, however, be in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service. The amount raised annually by such gross receipts or other special taxes shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided. This gross amount shall be determined in the manner provided by law. An amount equivalent to such real estate taxes shall be distributed annually among all local taxing authorities in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of all local taxing authorities, or in such other equitable proportions as may be provided by law.

"Notwithstanding the provisions of this section, any law which presently subjects real property of public utilities to local real estate taxation by local taxing authorities shall remain in full force and effect.

*Schedule*

"Section four shall take effect July 1, 1970, unless the General Assembly earlier provides enabling legislation in accordance therewith."

Section 4(a) of PURTA, 72 P.S. § 3274(a) (Supp.1976), provides:

"Payment of the tax imposed by section 3, and the distribution to local taxing authorities prescribed by section 7, shall be in lieu of local taxes upon public utility realty, as contemplated by Article VIII, section 4, of the Constitution of Pennsylvania."

5. For discussion of the background of Article VIII, Section 4, see *American Telephone and Telegraph Co. v. Board of Property Assessment Appeals and Review of Allegheny County*, 461 Pa. 716,

The provisions of PURTA governing the collection and distribution of the public utility realty tax are outlined in our opinion in *School Districts of Deer Lakes and Allegheny Valley v. Kane*, 463 Pa. 554, 345 A.2d 658, 660 (1975).

the Commonwealth collected from public utilities approximately $163,000,000 as a result of imposition of the public utility realty tax, and that, of this amount, approximately $82,300,000 has been distributed to local taxing authorities. The remaining approximately $80,000,000 alleges appellant, has been retained by the Commonwealth and commingled with other funds in the General Fund of the state treasury. The complaint avers that the amounts of money distributed to appellant and to numerous other local taxing authorities for the years in question fall short of the amounts the local bodies could have raised by directly taxing the public utility realty within their boundaries—amounts to which, appellant contends, it and other local taxing authorities are entitled under Article VIII, Section 4, *supra*. Thus, the complaint seeks, *inter alia*, distribution to appellant and all other allegedly aggrieved local taxing authorities of the portions of the public utility realty tax proceeds to which they claim to be entitled but which they have not yet received.

The cause of action which appellant purports to state is based upon the theory that Article VIII, Section 4, requires the Commonwealth to distribute to each local taxing authority "an amount of money, equal to the money that each local taxing authority would have obtained had it taxed the public utility realty directly." (Paragraph 12 of appellant's complaint, R. 7a). We agree with the Commonwealth Court that this theory is erroneous.

The purpose of Article VIII, Section 4, was to provide local taxing authorities with an additional source of revenue. See *American Telephone and Telegraph Company v. Board of Property Assessment Appeals and Review of Allegheny County*, 461 Pa. 716, 720–23, 337 A.2d 844, 846–47. To this end, the first sentence of the section eliminates the exemption from local real estate taxation which public utilities had theretofore enjoyed. Article VIII, Section 4 goes on, however, to provide for a means

by which all local taxing authorities—rather than only those in which public utility realty is located—may share in the benefits to be derived from this new revenue source. *Id.* It does so by providing for the replacement of local taxation of public utility realty by a gross receipts or other special tax imposed and collected by the Commonwealth and distributed among *all* local taxing authorities "in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of all local taxing authorities, or in such other equitable proportions as may be provided by law." To insure that any special tax imposed pursuant to Article VIII, Section 4, will be a source of revenue for all local taxing authorities,[6] the constitutional provision requires that the total amount of money collected by the Commonwealth from public utilities and distributed to all local taxing authorities as a group "shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided." [7] While there is thus a minimum amount which the Commonwealth must collect and distribute among local taxing authorities, there is nothing in Article VIII, Section 4, which prohibits the Commonwealth from raising more than this minimum amount and, if it does so, from retaining the excess. See *Heller v. Depuy*, 2 Pa.Cmwlth. 196, 217–18, 277 A.2d 849, 862 (1971). And, by suggesting a distribution of tax proceeds based upon the respective total tax receipts of the various local taxing authorities and by permitting any

---

6. See *School Districts of Deer Lakes and Allegheny Valley v. Kane*, 463 Pa. 554, 559, 345 A.2d 658, 661 (1975).

7. Article VIII, Section 4, states that "[t]his gross amount shall be determined in the manner provided by law." PURTA provides that this amount, which it terms the "realty tax equivalent," shall in general be "the product of the real estate property tax rate and the assessed valuation of utility realty." Section 2(f) of PURTA, 72 P.S. § 3272(f) (Supp.1976). The method by which the "realty tax equivalent" for each local taxing authority is to be reported is set forth in Section 6 of PURTA, 72 P.S. § 3276 (Supp. 1976).

"equitable" manner of distribution, Article VIII, Section 4, clearly authorizes a method of distribution under which the amount of money distributed to each local taxing authority bears no direct relationship to the amount which it could have raised through real estate taxation of its own utility realty.

In enacting PURTA, the legislature followed the suggestion of Article VIII, Section 4 by adopting a distribution scheme in which each local taxing authority's share of public utility realty tax proceeds is dependent upon the ratio of its total tax receipts to the aggregate tax receipts of all local taxing authorities. See § 7 of PURTA, 72 P.S. § 3277 (Supp.1976).[8] Thus, the amount distributed to each local taxing authority will in virtually every case be either greater or less than the amount of money such local unit could have raised by direct taxation of public utility realty within its boundaries; indeed, it would be a pure coincidence were the two amounts found to be the same in any given year.

In summary, even if, as appellant complains, the Commonwealth as a result of imposition of the public utility realty tax has collected more money than it has distributed, that fact alone does not mean that the Commonwealth has not met the Article VIII, Section 4, requirements as to the distribution of public utility realty tax proceeds. In view of the facts that the PURTA manner of distributing the proceeds of the public utility realty

8. Section 7(b) of PURTA, 72 P.S. § 3277(b) (Supp.1976) provides: "On or before the first day of October of 1971 and of each year thereafter, the [Department of Revenue] shall distribute to each reporting local taxing authority its share of the total realty tax equivalent . . . which share shall be the ratio which the total tax receipts reported by that local taxing authority bear to the total tax receipts [reported by all local taxing authorities]."

Section 2(g) of PURTA, 72 P.S. § 3272(g) (Supp.1976), defines the term "total tax receipts" as "the actual amount collected by a local taxing authority under all statutes authorizing the imposition of taxes, but shall not include fines, penalties, fees, licenses or receipts from any source other than taxes."

tax to local taxing authorities is authorized by Article VIII, Section 4, and that this distribution scheme does not contemplate that each local taxing authority must receive an amount of money equal to that which it could have raised by direct local taxation of public utility real estate within its jurisdiction, the School District's complaint states no *prima facie* entitlement to relief merely by alleging that appellant did not receive this amount.[9] Accordingly, the Commonwealth Court was correct in holding that the school district had not stated a cause of action and in dismissing its complaint.

Decree affirmed.   Costs on appellant.

---

**9.** It should be noted that appellant's complaint does *not* allege either that the Commonwealth has not distributed the entire realty tax equivalent, see note 7 *supra,* for any of the years in question, or that appellant has not received the share of the public utility tax proceeds to which it is entitled under PURTA.