376 A.2d 983

The TOWNSHIPS OF SPRINGDALE AND WILKINS, political
subdivisions of the Commonwealth of Pennsylvania,

v.

George J. MOWOD, Secretary of Revenue, Robert P. Casey,
Auditor General, Robert P. Kane, Attorney General, and Grace
M. Sloan, State Treasurer of the Commonwealth of Pennsylva-
nia, Appellants.

Supreme Court of Pennsylvania.

Argued Oct. 13, 1976.

Decided June 3, 1977.

Reargument Denied July 5, 1977.

Melvin R. Shuster, Deputy Atty. Gen., Dept. of Justice, Craig R. Burgraff, Deputy Counsel, Dept. of Auditor Gen., Harrisburg, for appellants.

F. E. Conflenti, Cauley, Birsic & Conflenti, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

[1] Appellees, Springfield and Wilkins Townships, brought this class action[1] in equity to compel appellants, certain Commonwealth officials,[2] to distribute to local taxing authorities $30,506,545.00 collected in June 1970 pursuant to the Public Utility Realty Tax Act (PURTA).[3] The Commonwealth Court held that the failure to distribute these funds to local taxing authorities violated Pa.Const. Article VIII, section 4, and ordered appellants to make an accounting of these funds and notify each local taxing authority of its right to a share of the distribution.[4] This appeal followed.[5] We conclude that neither PURTA nor the Pennsylvania Constitution require the Commonwealth to distribute these funds, and reverse.[6]

1. The class comprises 3,299 local taxing authorities within the state; 66 counties (Philadelphia is counted as a city), 51 cities, 960 boroughs, 92 townships of the first class, 1,461 townships of the second class, and 669 school districts.

2. Appellants, defendants in the Commonwealth Court, are George J. Mowod, Secretary of Revenue, Robert P. Casey, Auditor General, and Grace M. Sloan, Treasurer. The Commonwealth Court dismissed the complaint as to Attorney General Robert P. Kane, a decision which has not been challenged in this Court.

3. Act of March 10, 1970, P.L. 168, as amended, 72 P.S. § 3271 et seq. (Supp.1976).

4. *Townships of Springdale & Wilkins v. Mowod et al.,* 23 Pa.Cmwlth. 298, 352 A.2d 194 (1976). Judge Wilkinson dissented, joined by Judge Blatt.

5. We hear this case pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 203, 17 P.S. § 211.203 (Supp.1976).

   Appellees, the Townships of Springdale and Wilkins, moved to quash the appeal to this Court based on the failure of appellants to file exceptions in the Commonwealth Court pursuant to Pa.Rule Civ.P. § 1518. In our view, the decision of the Commonwealth Court, which heard the case en banc on cross-motions for summary judgment, constituted a final decree, from which exceptions need not be filed. The motion to quash is, accordingly, denied.

6. In light of this determination, it is unnecessary to pass on the defenses of laches and sovereign immunity interposed by appellants.

## I

Pa.Const. Article VIII, section 4 eliminates the historical exemption of public utility property from local real estate taxes.[7] Rather than authorizing local taxation, however, it provides that payment by utilities of gross receipts or other special taxes to the Commonwealth, and distribution of an amount no less than the total sum of real estate taxes which local taxing authorities could otherwise have imposed, will be in lieu of direct local taxation.[8] This constitutional provision was approved by the voters in 1968, to take effect July 1, 1970, unless the Legislature provided enabling legislation to make it effective earlier.

**7.** The exemption was established by judicial decision in *Schuylkill Bridge Co. v. Frailey,* 13 Serg. & R. 422 (Pa.1826). For discussion of the history of the exemption, see Comment, Exemption of Real Property of Public Utilities from Local Taxation in Pennsylvania, 13 U.Pitt.L.Rev. 263 (1952).

**8.** Pa.Const. art. VIII, § 4 provides:
"The real property of public utilities is subject to real estate taxes imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided shall, however, be in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service. The amount raised annually by such gross receipts or other special taxes shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided. This gross amount shall be determined in the manner provided by law. An amount equivalent to such real estate taxes shall be distributed annually among all local taxing authorities in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of all local taxing authorities, or in such other equitable proportions as may be provided by law.
"Notwithstanding the provisions of this section, any law which presently subjects real property of public utilities to local real estate taxation by local taxing authorities shall remain in full force and effect.
SCHEDULE
"Section four shall take effect July 1, 1970, unless the General Assembly earlier provides enabling legislation in accordance therewith."

The Legislature enacted PURTA, which became effective March 10, 1970, shortly before the constitutional deadline.[9] PURTA imposes a public utility realty tax, to be collected by the Commonwealth, and provides for annual distributions, beginning in 1971, of a minimum amount of the revenues to local taxing authorities in accordance with a formula set forth in Article VIII, section 4. Pursuant to PURTA and the constitutional amendment, payment of this tax by utilities is in lieu of direct imposition of local property taxes on public utility realty.[10]

■ The first collection under PURTA was made on June 1, 1970, and raised $30,506,545.00 in revenues. These funds were deposited in the Commonwealth's general fund[11] and were not distributed to local taxing authorities. In accordance with section 7(b) of PURTA, 72 P.S. 3277(b) (Supp. 1976), the first distribution of PURTA revenues was made by October 1, 1971, and was derived from the second PURTA collection of June 1, 1971.

Appellees assert that the passage of PURTA, effective March 10, 1970, constituted "earlier . . . enabling legislation" implementing Pa.Const. Article VIII, section 4 immediately. Because, in their view, the "exclusive purpose"

**9.** The historical developments leading up to the adoption of Article VIII, section 4 and the enactment of PURTA are described in Part I of *American Telephone & Telegraph Co. v. Board of Property Assessment Appeals and Review of Allegheny County,* 461 Pa. 716, 220–24, 337 A.2d 844, 846–48 (1975). See also *Southeast Delco School District v. Shapp,* 468 Pa. 475, 364 A.2d 292 (1976) and *School Districts of Deer Lakes and Allegheny Valley v. Kane,* 463 Pa. 554, 345 A.2d 658 (1975).

**10.** Section 4(a) of PURTA provides:
"Payment of the tax imposed by section 3, and the distribution to local taxing authorities prescribed by section 7, shall be in lieu of local taxes upon utility realty, as contemplated by article VIII, section 4, of the Constitution of Pennsylvania."
72 P.S. § 3274 (Supp.1976).

**11.** See Act of May 16, 1927, P.L. 848, 72 P.S. § 3601 (1968). Under this Act, unless specifically excepted, all moneys payable to the Commonwealth are to be deposited in the general fund and may be appropriated by the Legislature for any lawful purpose. PURTA does not authorize placement of revenues collected thereunder in a special fund.

of PURTA was to implement Article VIII, section 4, they urge that the constitutional amendment mandates a distribution of the 1970 PURTA revenues. We cannot agree.

█ We conclude that, in enacting PURTA, the Legislature did not intend to change the scheduled effective date of Article VIII, section 4. Although PURTA was designed to satisfy the constitutional mandate, nothing in PURTA suggests that the imposition of the public utility realty tax was intended to change the scheduled effective date for the distribution of funds contemplated in Article VIII, section 4. The first distribution of PURTA revenues on or about October 1, 1971, satisfied the constitutional mandate. Consequently, appellees have no right to the distribution of additional revenues.

## II

PURTA provides that, beginning in 1971, funds are to be distributed annually to local taxing authorities by October 1, based upon a formula [12] derived from reports submitted to the Commonwealth by local taxing authorities the preceding April. 72 P.S. §§ 3276–77 (Supp.1976). These reports must include an annual assessment of the public utility realty within the political boundaries of each local taxing authority. The first such assessment was to be made by October 1, 1970. 72 P.S. § 3275 (Supp.1976). Each report must also include the local taxing authority's real estate tax rate for the current fiscal year. 72 P.S. § 3276 (Supp.1976). From these reports the Commonwealth determines the "realty tax equivalent" [13] for all the local taxing authorities throughout

12. The formula provides that the distribution to each local taxing authority be in the ratio which the total tax receipts reported by that local taxing authority bear to the total tax receipts reported by all local taxing authorities. 72 P.S. § 3277(a) and (b) (Supp.1976). This is the same formula suggested, but not made mandatory, by Article VIII, section 4. See note 8, supra.

13. "Realty tax equivalent" is defined in PURTA as the total amount of taxes which a local taxing authority could have imposed on utility realty if PURTA and Article VIII, section 4 did not exempt such property from direct local taxation. 72 P.S. § 3272(f) (Supp.1976).

the state, which is the minimum amount required by Article VIII, section 4 to be distributed annually.

The first distribution of PURTA revenues was based upon the local property assessments made by October 1, 1970, and the local tax rates in force on April 1, 1971. Both dates fall within the Commonwealth's fiscal year beginning July 1, 1970 (fiscal year 1971). Act of April 9, 1929, P.L. 177, § 608, as amended, 71 P.S. § 228 (Supp.1976). July 1, 1970, was also the scheduled effective date of Article VIII, section 4. We conclude from these facts that PURTA provides for the distribution of funds collected during the fiscal year in which the local reports are filed, and was not intended to change the scheduled effective date of Article VIII, section 4 from the beginning of fiscal year 1971. Since the June 1970 PURTA collection was made prior to the effective date of the constitutional amendment, Article VIII, section 4, does not require that the 1970 revenues be distributed to local taxing authorities.

The Commonwealth Court held that, although the first distribution pursuant to PURTA was not required until October, 1971, the Commonwealth was required to distribute some or all of the 1970 PURTA collection along with the distribution from the June 1971 collection. The Commonwealth Court considered a distribution necessary based on its view that PURTA was enacted "exclusively" to raise funds for distribution to local taxing authorities in accordance with Article VIII, section 4.[14]  We do not agree.

14. · The court relied on language in American Telephone & Telegraph, supra, for this conclusion. There we stated that "The tax imposed by PURTA is the sole source of revenue for distribution to local taxing authorities pursuant to article VIII, section 4 and PURTA. Furthermore, because the new tax is designed exclusively for this purpose and therefore will not affect the Commonwealth's general revenues, it is a 'special tax' as contemplated in the Constitution." (footnotes omitted) 461 Pa. at 729, 337 A.2d at 850. Read in context, it is clear we meant only that PURTA, and no other tax, was intended as the source of revenues for implementing the distribution to local taxing authorities contemplated by Article VIII, section 4. In American Telephone & Telegraph, local taxing authorities were asserting a right to subject public utility realty to local taxation pursuant to the constitutional amendment. We held only that PURTA was intended

First, the Legislature contemplated no such double distribution when it enacted PURTA. PURTA provides no means for the Commonwealth to determine either the amount to be distributed, or the proportional share due each eligible local taxing authority from the revenue collection in June 1970. Section 6 of PURTA, 72 P.S. § 3276 (Supp.1976), provides that the first annual reports from local taxing authorities, containing their local assessments and current tax rates, be submitted on or before April 1, 1971. In *School Districts of Deer Lakes and Allegheny Valley v. Kane,* 463 Pa. 554, 566, 345 A.2d 658, 664 (1975), we recognized that this information is essential to the implementation of PUR TA's distribution scheme. We held that although the terms of the constitutional amendment mandate distribution of a minimum amount of revenues to local taxing authorities, it is not violated by a section of PURTA which provides that local taxing authorities failing to timely submit the required reports forfeit any share in the distribution. PURTA cannot be read to require a distribution without this information.

Moreover, the PURTA tax was not enacted exclusively to raise funds for distribution to local taxing authorities. In *Southeast Delco School District v. Shapp,* 468 Pa. 475, 478–88, 364 A.2d 292, 294–95 (1976), we held that nothing in Article VIII, section 4 prohibits the Commonwealth from utilizing PURTA as a source of general revenues for the state, as long as the realty tax equivalent is distributed. It is apparent that, in imposing the PURTA tax, the Legislature contemplated this secondary purpose of providing the Commonwealth with revenues, since a substantial excess of revenues over the constitutional minimum has been collected pursuant to PURTA since Article VIII, section 4 went into effect on July 1, 1970.[15]

to implement Article VIII, section 4, and its payment precluded local taxation. The issue whether local taxing authorities were entitled to a distribution of the 1970 PURTA collection was not before us.

15. According to the Commonwealth's answers to appellee's interrogatories, the Commonwealth retained $10,132,548.00 of the $30,840,-

Appellees argue that a determination that the Commonwealth may retain the 1970 PURTA revenues is anomalous and unfair because local taxing authorities, the beneficiaries of Article VIII, section 4, were nonetheless precluded from imposing their real estate taxes on public utility realty in 1970. This argument, however, is not constitutionally significant.

█ Although Article VIII, section 4 by its terms lifts the exemption from local real estate taxes of public utility realty, it was never intended to authorize direct local taxation. See *Southeast Delco School District v. Shapp,* 468 Pa. at 475, 364 A.2d at 294, *American Telephone & Telegraph Co. v. Board of Property Assessment Appeals and Review of Allegheny County,* 461 Pa. 716, 730, 337 A.2d 844, 851 (1975). Rather, it contemplates the use of local tax rates and assessments to determine the amounts to be distributed to local taxing authorities of a tax to be imposed and collected by the Commonwealth.[16]   PURTA provides that the constitutional amendment be implemented by requiring that the necessary local assessments and reports be made and submitted during the Commonwealth's fiscal year beginning

343.00 collected in 1971, $10,338,066.00 of the $32,397,253.00 collected in 1972 and $16,544,176.00 of the $36,317,419.00 collected in 1973.

**16.**   We note that because different local taxing authorities have different fiscal years, an actual lifting of the exemption of public utility realty from local taxation would have different tax consequences in different taxing units in the first year of operation.  For example, townships operating on a calendar fiscal year, see 53 P.S. §§ 56701, 65901 (Supp.1976), could have imposed their taxes for fiscal year 1970 after Article VIII, section 4 went into effect July 1, 1970, as well as in fiscal year 1971 and thereafter.  School districts, operating on a July to June fiscal year, see 24 P.S. § 6–671 (Supp.1976), in the same circumstances, would have been limited to raising revenues in their 1971 fiscal year.  Thus, in the first year of the exemption, some local taxing authorities would have been able to impose their taxes twice, while others could have collected only once.  The constitutional amendment, however, contemplates only a single annual distribution of funds collected by the Commonwealth.  It does not require consideration of what any particular taxing authority could have obtained in revenues if the exemption from local taxation were actually lifted. *Southeast Delco School District v. Shapp,* 468 Pa. at 475, 364 A.2d at 295.

July 1, 1970, the effective date of Article VIII, section 4, and that the first distribution to local taxing authorities be made no later than October 1, 1971, based on the reports submitted. In *School Districts of Deer Lakes,* supra, we stated that:

"Article VIII, section 4 expressly authorizes the enactment of a special tax such as PURTA in place of local taxation of public utility realty. The nature of the tax, however, and the details of its imposition, collection and distribution are not spelled out in the constitution. It must be assumed that the framers intended that the legislature should have freedom to make reasonable provision in these respects."

463 Pa. at 564, 345 A.2d at 663. PURTA is designed to effectuate an annual distribution, according to an equitable formula suggested in the constitutional amendment itself, of the statewide "realty tax equivalent." This is all Article VIII, section 4 requires. *American Telephone & Telegraph Co. v. Board of Property Assessment,* 461 Pa. at 729–30, 337 A.2d at 851.

Since the 1971 distribution of PURTA revenues to local taxing authorities satisfied the mandate of Article VIII, section 4, appellees have no right to a distribution of prior PURTA revenues.

The decree of the Commonwealth Court is reversed.

Each Party pay own Costs.

Former Chief Justice JONES did not participate in the decision of this case.