298

The Townships of Springdale and Wilkins, Plaintiffs *v.* George J. Mowod, Secretary of Revenue; Robert P. Casey, Auditor General; Robert P. Kane, Attorney General; and Grace M. Sloan, State Treasurer of the Commonwealth of Pennsylvania, Defendants.

Argued September 9, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Franklyn E. Conflenti*, with him *David R. Cashman*, and *Cauley, Birsic & Conflenti*, for plaintiffs.

*Melvin R. Shuster*, Deputy Attorney General, with him *Gerald Gornish*, Deputy Attorney General, *Robert P. Kane*, Attorney General, *Craig R. Burgraff*, Deputy Counsel, and *Frank P. Lawley, Jr.*, Chief Counsel, for defendants.

OPINION BY JUDGE KRAMER, February 13, 1976:

This case involves a suit in equity filed by the Townships of Springdale and Wilkins, as a class action,[1] to effectuate the distribution of revenues received by the Commonwealth prior to June 1, 1970, to local taxing authorities in the amount of $30,506,545.00, pursuant to the Public Utility Realty Tax Act (PURTA).[2] The mat-

---

1. The class comprises 3,299 local taxing authorities, *i.e.*, 66 counties (Philadelphia is counted as a city), 51 cities, 960 boroughs, 92 townships of the first class, 1,461 townships of the second class, and 669 school districts.

2. Act of March 10, 1970, P.L. 168, *as amended*, 72 P.S. § 3271 et seq.

ter comes within the original jurisdiction of this Court and is before us on cross motions for summary judgment. For the reasons set forth below, we deny the defendants' motion for summary judgment and sustain in part the plaintiffs' motion for summary judgment.

On two prior occasions we have rendered opinions which overruled preliminary objections filed by the parties.[3] This opinion, as well as the prior opinions, involves an interpretation of Article VIII, Section 4 of the Pennsylvania Constitution of 1968[4] and PURTA. The

---

3. *Townships of Springdale and Wilkins v. Kane,* 16 Pa. Commonwealth Ct. 171, 328 A.2d 904 (1974) and 11 Pa. Commonwealth Ct. 254, 312 A.2d 611 (1973).

4. Article VIII, Section 4 reads as follows:

"The real property of public utilities is subject to real estate taxes imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided shall, however, be in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service. The amount raised annually by such gross receipts or other special taxes shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided. This gross amount shall be determined in the manner provided by law. An amount equivalent to such real estate taxes shall be distributed annually among all local taxing authorities in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of all local taxing authorities, or in such other equitable proportions as may be provided by law.

"Notwithstanding the provisions of this section, any law which presently subjects real property of public utilities to local real estate taxation by local taxing authorities shall remain in full force and effect.

SCHEDULE

"Section four shall take effect July 1, 1970, unless the

historical background and purpose of Article VIII, Section 4 and PURTA have been set forth many times[5] and need not be repeated here. We believe it will be helpful, however, to set forth certain facts pertinent to this opinion.

PURTA became law on March 10, 1970, and on or about June 1, 1970,[6] the Commonwealth collected $29,359,626.00[7] of PURTA tax levied on public utility real estate. No special account has ever been established for PURTA funds. All of the PURTA tax revenues collected on or about June 1, 1970, were deposited in the General Fund and commingled with other funds. The Commonwealth admits in its Answer that none of the PURTA tax revenue collected in 1970 has ever been distributed to any local taxing authority pursuant to the formula set forth in PURTA. The first distribution of PURTA tax revenue to local taxing authorities was made on or about October

General Assembly earlier provides enabling legislation in accordance therewith."

5. *School Districts of Deer Lakes and Allegheny Valley v. Kane,* Pa. , 345 A.2d 658 (1975); *Southeast Delco School District v. Shapp,* 18 Pa. Commonwealth Ct. 389, 336 A.2d 656 (1975); *American Telephone and Telegraph Company v. Board of Property Assessment,* 10 Pa. Commonwealth Ct. 41, 309 A.2d 193 (1973), *rev'd.,* Pa. , 337 A.2d 844 (1975); *Duquesne Light Company v. Board of Property Assessment,* 10 Pa. Commonwealth Ct. 41, 299 A.2d 660 (1973); and *Heller v. Dupuy,* 2 Pa. Commonwealth Ct. 196, 277 A.2d 849 (1971).

6. Section 3(a) of PURTA, 72 P.S. §3273(a), reads as follows:

"(a) On or before the first day of June of 1970 and of each year thereafter, every public utility shall pay to the state treasurer, through the Department of Revenue, a tax at the rate of thirty mills upon each dollar of the state taxable value of its utility realty at the end of the preceding calendar year."

7. Late payments have been received, so that by February 28, 1974, the Commonwealth had received $30,506,545.00 for the period in question.

1, 1971,[8] and this distribution was made only from PURTA revenues collected on or about June 1, 1971. At no time did any official of the Commonwealth ever disclose the taxable period for which the PURTA distribution was being made.

The defendants originally contended that the PURTA tax revenues collected in 1970 were distributed to the local taxing authorities in October of 1971. After our initial opinion on preliminary objections, the defendants changed their defense. They now admit that the 1970 funds were never distributed, but they argue that PURTA was intended by the Legislature to be a general tax revenue measure for the period March 10, 1970, through June 30, 1970, and only thereafter to be a tax revenue measure pursuant to Article VIII, Section 4. Our analysis of PURTA, including its title,[9] forces us to conclude that it was not intended for such a dual tax purpose. We need not discuss this issue at great length, because it has already been settled by our Supreme Court, which has held that PURTA was designed "exclusively"

---

8. Section 7(b) of PURTA, 72 P.S. §3277(b) reads in pertinent part as follows:

"(b) On or before the first day of October of 1971 and of each year thereafter, the department shall distribute to each reporting local taxing authority its share of the total realty tax equivalent. . . ."

9. PURTA's title reads as follows:

"Imposing a special tax upon realty of public utilities; providing for distribution of moneys to local taxing authorities in lieu of local real estate taxes; conferring powers and imposing duties upon the Department of Revenue, local assessing and other officials, and public utilities; and providing penalties."

Article III, Section 3 of the Pennsylvania Constitution of 1968 provides that:

"No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compelling the law or a part thereof. . . ."

for the purpose of providing revenue for distribution to local taxing authorities pursuant to Article VIII, Section 4.[10]

The defendants contend that an issue of material fact exists which would prohibit the granting of summary judgment.[11] The alleged issue of material fact concerns the circumstances surrounding the passage of PURTA, including an alleged severe state governmental budgetary crisis for the fiscal year 1969-70. The defendants argue that because of this alleged fiscal crisis, the Legislature must have intended PURTA to be a general tax revenue measure prior to July 1, 1970. According to the defendants, Section 1921 (c) of the Statutory Construction Act[12] requires us to consider the circumstances surrounding the passage of PURTA in order to determine the legislative intent. Section 1921 (c) is only applicable, however, when the words of a statute are not explicit. The wording of PURTA is clear and free from ambiguity, and, therefore, we may not disregard its clear meaning under the pretext of pursuing an alleged but unexpressed legislative intent.[13] We hold that the alleged circumstances surrounding the passage of PURTA are not material to the issues involved in this case, and that there are no issues of material fact present which would prohibit the granting of a summary judgment.

The defendants argue that Article VIII, Section 4, did not take effect until July 1, 1970. This argument conveniently overlooks the last clause of the Schedule in Article

10. *American Telephone and Telegraph Company, supra* note 5, Pa. at , 337 A.2d at 850.

11. In support of their own motion for summary judgment, the defendants contend, somewhat inconsistently, that they have established the absence of any issue of material fact.

12. 1 Pa. C.S. §1921 (c).

13. Section 1921 (b) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921 (b).

VIII, Section 4 which reads "unless the General Assembly earlier provides enabling legislation in accordance therewith." The General Assembly did "earlier" provide enabling legislation (PURTA), and, therefore, Article VIII, Section 4 took effect on March 10, 1970, the effective date of PURTA. The defendants also argue that PURTA did not require distribution to local taxing authorities prior to October of 1971. We agree that distribution was not required prior to October of 1971, but this does not answer the question of whether the tax collected in 1970 should have been distributed when the initial distribution was made. The Supreme Court has held that the PURTA tax paid by a utility in 1970 was in lieu of local realty taxes as contemplated by Article VIII, Section 4.[14] It follows, therefore, that the 1970 tax was subject to distribution in accordance with Article VIII, Section 4. We hold that some of the defendants had a clear statutory and constitutional duty to distribute the PURTA tax revenues collected in 1970 to the local taxing authorities, in accordance with the formula set forth in PURTA.

The defendants raise the issues of sovereign immunity and laches. We need not discuss the sovereign immunity argument since we considered and rejected it in our first opinion on the preliminary objections.[15] As we noted in that opinion, the purpose of this suit is to enforce the constitutional mandate set forth in Article VIII, Section 4. The problem with the laches argument is that the record indicates the plaintiffs had no way of knowing whether the October 1971 distribution included the tax revenues collected in 1970. Even after this suit was filed, the defendants stated that the October 1971 distribution included the amount due for the year 1970. We hold that the delay in filing this suit was excusable, and that it did not unduly prejudice the defendants.

---

14. *American Telephone and Telegraph Company, supra* note 5.

15. *Townships of Springdale and Wilkins, supra* note 3.

The defendants argue that they cannot resurrect monies already expended from the General Fund. They further argue that none of the appropriation bills passed by the Legislature specifically refers to appropriations for the purpose of paying real estate tax equivalents to local taxing authorities for the period in question. Our research indicates that the Legislature has never stated with specificity the period for which the appropriated monies were applicable. Rather, the appropriation bills were passed for the purpose of meeting the constitutional and statutory mandates. Fortunately, the amount of money collected under PURTA far exceeds the payments which are required to be made to local taxing authorities.[16] It is possible, therefore, that the amount of money which should have been paid to local taxing authorities as real estate tax equivalents for the tax collected in 1970 can be

---

16. The Commonwealth is entitled to keep PURTA revenues which are in excess of the realty tax equivalents required to be distributed to the local taxing authorities. *South East Delco, supra,* note 5. The Legislature has provided a windfall to the Commonwealth by levying PURTA taxes far in excess of the amount necessary to carry out the constitutional mandate. We are permitted to take judicial notice of the Report of the Auditor General for 1973-74 which indicates that the General Fund received $36,312,417.15 in PURTA revenues in 1973 and $42,425,051.32 in 1974. In their cross motion for summary judgment the defendants state that PURTA distributions to local taxing authorities were $20,709,153.00 in 1971, $21,971,187.00 in 1972 and $19,773,243.00 in 1973. We point out, as we have in other cases, that the taxes paid by public utilities ultimately are paid by consumers. Every penny of the PURTA tax paid by the public utilities to the Commonwealth finds its way into the rates paid by the consumers of gas, electric, water, etc. Typical of governmental taxing schemes, PURTA provides additional revenues to the Commonwealth by levying taxes about double the amount of money necessary to carry out the constitutional mandate. In other words, our citizens who pay their utility bills are providing tax revenues hidden in their utility bills. At a time when the public is clamoring for lower utility bills, government compounds their problem with hidden taxes.

paid out of current and future PURTA tax revenues collected by the Commonwealth. Under the constitutional doctrine of separation of powers, judicial intervention into the affairs of the coordinate independent legislative branch of our state government is narrowly restricted and must be exercised with restraint in all events. In this case, inasmuch as neither the General Assembly nor any of its officers or members are parties to the cause of action asserted, we cannot judicially decree action by it even if one assumes the subject of the cause of action might otherwise allow for judicial intervention. We are convinced, however, that the General Assembly will readily recognize any obligation it may have to give full effect to the decision and Order of this Court in this case. If the named defendants, for want of appropriated funds in excess of that collected by the Commonwealth in the current fiscal year, are unable to meet the obligations herein imposed upon the Commonwealth, the General Assembly will surely take the necessary steps to remedy any such deficiency. Our review of the Auditor General's Report[17] permits us to assume that if future appropriation bills for the payment of PURTA tax equivalent funds out of the General Fund remain similar to the past appropriation bills, they will be adequate (if not in one year, then over two or three years) to meet the constitutional mandate and the Order of this Court.

One final matter remains for disposition. The record submitted with the plaintiffs' motion for summary judgment does not support the plaintiffs' alleged right to judgment against the Attorney General. There is nothing in this record to indicate that the Attorney General has any duty relating to the collection and distribution of PURTA tax revenue. We hold, based upon this record, that judgment cannot be rendered against the Attorney

17. *See* note 16, *supra.*

General and that the complaint, insofar as it applies to the Attorney General, must be dismissed.

In accordance with the above, we therefore

ORDER

AND NOW, this 13th day of February, 1976, based upon the pleadings and affidavits filed, and after argument on cross motions for summary judgment, the defendants' motion for summary judgment is hereby denied; the plaintiffs' motion for summary judgment against the Attorney General is denied, and the complaint insofar as it is applicable to the Attorney General is hereby dismissed; the plaintiffs' motion for summary judgment against the remaining defendants is granted; it is ordered that the Secretary of Revenue, the Auditor General, and the State Treasurer of the Commonwealth of Pennsylvania, be and they hereby are directed, jointly or severally, to make an accounting to all local taxing authorities which have qualified under the provisions of the Public Utility Realty Tax Act, Act of March 10, 1970, P.L. 168, *as amended,* 72 P.S. §3271 et seq., for the payment of real estate tax equivalents for the year 1970; it is also ordered that the remaining defendants, severally or jointly, serve upon each of the qualified local taxing authorities a copy of this Order as notice of their rights resulting from the determination made in this case; and it is further ordered that counsel for the plaintiffs shall submit to this Court a statement for legal services rendered on an hourly basis and for expenses incurred, after which this Court, by further Order, will determine the amount and means for the payment of counsel fees applicable to this class action.

———

DISSENTING OPINION BY JUDGE WILKINSON:

I must respectfully disagree with the conclusion of the majority. PURTA, in my opinion, did not provide for the distribution of monies collected from utilities prior to the first day of June, 1970.

Section 3(a) of PURTA, 72 P.S. §3273(a), requires public utilities to pay realty taxes to the Commonwealth on the first day of June of each year *beginning in 1970*. Section 6(a), 72 P.S. §3276(a), provides that local taxing authorities, desiring to share in the monies paid to the State, submit a report on or before the first of April of each year *beginning in 1971*. These reports form the basis, under Section 7, 72 P.S. §3277, for calculating the individual distribution to each local authority. Since the reports contain, *inter alia*, realty tax equivalents based on rates for the *current* fiscal year, it is submitted that the reports refer to the distribution of funds collected by the State only during the fiscal year in which the report was filed.

Accordingly, it is my opinion that while the Commonwealth, in 1970, was to collect utility realty taxes under PURTA, it did not have the statutory authority or means —*i.e.*, the reports which were not to be filed until April 1, 1971—to calculate how such taxes were to be distributed locally, nor did it have the authority to distribute. Thus, the "distribution" element necessary to activate Article VIII, Section 4, of the Pennsylvania Constitution, earlier than July 1, 1970, was absent. It is, therefore, my view that PURTA only provided for the distribution of public utility realty taxes collected after Article VIII, Section 4, became law on July 1, 1970.

Judge BLATT joins in this dissent.