Patrick B. BAYLESS

v.

**PHILADELPHIA NATIONAL LEAGUE CLUB, a/k/a the Philadelphia Phillies.**

**Civ. A. No. 76–3221.**

United States District Court,
E. D. Pennsylvania,
Civil Division.

May 22, 1979.

John I. McMahon, King of Prussia, Pa., for plaintiff.

Gerald A. Dennehey, Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

Plaintiff, Patrick B. Bayless, brought this action against the Philadelphia Phillies National League Baseball Club for personal injuries suffered while employed as a professional baseball pitcher in the Phillies minor league farm system. The complaint asserts jurisdiction under 28 U.S.C. § 1332.

Initially, defendant moved for summary judgment contending that plaintiff's claims were barred by both the applicable Pennsylvania Statute of Limitations for personal injuries and the Pennsylvania Workmen's Compensation Act. I granted defendant's motion and entered judgment in favor of defendant holding that plaintiff's back injury and mental illness claims were barred by the statute of limitations, without reaching the Workmen's Compensation Act defense. On appeal, the Court of Appeals held that an issue of material fact precluded the entry of summary judgment in favor of defendant on the Statute of Limitations defense. The applicability of the Workmen's Compensation Act was not decided. *Bayless v. Philadelphia National League Club,* 579 F.2d 37 (3rd Cir. 1978). Defendant has now renewed its motion for summary judgment contending that plaintiff's exclusive remedy is the Pennsylvania Workmen's Compensation Act.

The basic facts are spelled out in my prior memorandum, *Bayless v. Phila. Nat'l League Club,* C.A. No. 76–3221 (E.D.Pa. June 21, 1977), and in the opinion of the Court of Appeals, *supra,* and only facts which are necessary to a complete understanding of the issues raised by the motion under consideration will be added.

As noted by the Court of Appeals, plaintiff has abandoned any claims based on the physical injury to his back. Thus, the sole remaining claim is for the mental illness which he suffered.

Plaintiff claims his mental illness was caused by the administration of drugs following complaints of severe back pain. (Complaint ¶ 7–8). At the time the drugs were administered, plaintiff was in defendant's employ (Complaint ¶ 4–8) and under the care of a team trainer and physician supplied by defendant (Complaint ¶ 7). More specifically, plaintiff attributes the mental illness to the fact that "Defendant had . . . a contractual duty to plaintiff to provide him with good sound medical care in the event Plaintiff's skills were being impaired by injury, illness or disease and Defendant failed to provide such care". (Complaint ¶ 15(b)–(c)). Plaintiff further claims a failure of defendant to provide proper medical care in the administration of drugs, (Complaint ¶ 18), and the failure of defendant to obtain plaintiff's informed consent to medical treatment. (Complaint ¶ 19).

The Workmen's Compensation Act provides coverage for injuries and death resulting from accidents occurring in the course of employment for all employees of employers who have agreed to accept the provisions of the Act. The Pennsylvania Supreme Court has repeatedly held that there is a conclusive presumption that the

parties to the employment agreement have accepted the Act, absent either party's written notice of rejection of its provisions. *Evans v. Allentown Portland Cement Co.,* 433 Pa. 595, 252 A.2d 646 (1969); *Dolan v. Linton's Lunch,* 397 Pa. 114, 152 A.2d 887 (1959); *Socha v. Metz,* 385 Pa. 632, 123 A.2d 837 (1956). Plaintiff's failure to plead that the Act has been rejected is tantamount to pleading that the parties have accepted the Act as part of the employment contract. *Hyzy v. Pittsburgh Coal Co.,* 384 Pa. 316, 121 A.2d 85 (1956); *Berkowitz v. Philadelphia Chewing Gum Corp.,* 198 F.Supp. 351 (E.D.Pa.1961), *aff'd,* 317 F.2d 192 (3rd Cir. 1963).

█ By virtue of the Act, an employee's common law right to damages for injuries suffered in the course of his employment as a result of his employer's negligence is completely surrendered in exchange for the exclusive statutory right of the employee to compensation for all such injuries, and the employer's liability as a tortfeasor is abrogated.[1] *Socha v. Metz, supra,* 385 Pa. at 637, 123 A.2d 837.

█ To come within the purview of the Act, there must be both an accident in the course of employment and an injury. *See* Act of June 2, 1915, P.L. 736, art. III, § 301(a), as amended, 77 P.S. § 431;[2] *Hinkle v. H. J. Heinz Company,* 462 Pa. 111, 337 A.2d 907 (1975). Given the circumstances here, whether an accident has occurred is a matter of law for the court to decide. *Pages Department Store v. Velardi,* 464 Pa. 276, 346 A.2d 556, 561 (1975).

In *Baur v. Mesta Machine Co.,* 393 Pa. 380, 143 A.2d 12 (1958), the Pennsylvania Supreme Court specifically held that injuries resulting from an employer's failure to provide proper medical treatment are compensable under the Pennsylvania Workmen's Compensation Act. In *Baur,* the widow of a deceased employee instituted an action in trespass against the employer. As related by the Court, the employee, while at work, became bothered by a pain in the arm and chest, an illness not alleged to have been brought about by any unusual physical exertion or mishap, and therefore not itself compensable. *Id.* at 382, 143 A.2d 12. The employee then reported to the employer-provided dispensary, where he failed to receive proper medical treatment. The lower court sustained the employer's preliminary objections and dismissed the complaint on the ground that the Workmen's Compensation Act provided the exclusive remedy available to the plaintiff. On appeal, the plaintiff contended that since the employee's death was not the result of an "accident", the Act was inapplicable and the common law cause of action against the employer for the failure to provide proper medical care was the proper remedy.

The Court acknowledged the distinction between those cases in which the failure to provide proper medical treatment occurred subsequent to the infliction of a compensable injury and the facts in *Baur,* but, nevertheless, held that injuries caused by the failure to provide proper medical treatment for a non-compensable illness are themselves compensable under the Pennsylvania Workmen's Compensation Act. *Id.* at 385, 143 A.2d 12.

In *Warr v. Dick Bros., Inc.,* 6 D&C 288 (1923), and *Leonard v. Fox,* 27 D&C 475 (1936), where employees mistakenly drank substances which they believed would alleviate their sickness but which actually proved harmful, recovery under the Act was permitted. The *Baur* plaintiff attempted to distinguish *Warr* and *Leonard*

---

1. Section 303 of the Act (77 P.S. § 481) provides:

   "Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any method of determination thereof, other than as provided, in article three of this act. . . . ."

2. This section was amended in 1972 to provide compensation for all injuries suffered in the course of employment, thus eliminating the requirement of proof of an accident. See Act of March 29, 1972, P.L. 159 No. 61 § 6, as amended, 77 P.S. § 431. The parties agree that this amendment is not applicable here.

on the ground that those cases involved injuries caused by a sudden positive act, while *Baur* involved death caused by a failure to act, without any sudden physical violence. 393 Pa. at 384, 143 A.2d 12. The Court, however, refused to recognize such a distinction and deemed the principle of *Warr* and *Leonard,* which involved inadequate treatment of non-compensable illnesses, to be controlling. *Id.*

The failure to provide proper medical treatment was held to constitute an "accident" bringing the Act into operation:

> "When decedent became ill he proceeded, as directed by his employer, to the dispensary provided for such contingencies. Due to the failure of the attendant to provide adequate medical care, his death resulted a short time later. Certainly, the death was unexpected and unforeseen and not in the usual course of events. To decide otherwise would require us to believe that proper treatment was intentionally withheld. Nor are we able to distinguish the present situation where no treatment was given from those where an improper remedy was provided." *Id.* at 384, 143 A.2d at 14.

The Court concluded by holding that:

> "Here death was directly attributable to the neglect of the attendant in not providing proper medical care which was a duty the employer had agreed to assume. For these reasons, we believe that the death of the decedent was sufficiently unforeseen, fortuitous and sudden to be considered as an industrial accident arising out of the course of employment and thus compensable under the Workmen's Compensation Act." *Id.* at 385, 143 A.2d at 14.

Therefore, since the Act provided the exclusive remedy for compensable injuries, the summary dismissal by the lower court was affirmed. *Id.*

In *Baur v. Mesta Machine Co.,* 405 Pa. 617, 176 A.2d 684, 685 (1961) (Baur II), the Pennsylvania Supreme Court reiterated its holding:

> "This Court decided . . . that when an employer voluntarily provides a first aid room and administers to ill as well as injured employees, it has the duty to provide proper medical care. If the employee's death . . . was found to be due to the neglect of the employer in not providing proper medical care, this [c]ould constitute an 'industrial accident' which is compensable under the Workmen's Compensation Law."

The Court expressly stated that once it is shown that "1) the employer assumed the obligation of providing medical care to the employees who became ill in the course of their employment; 2) that proper care was not provided; and 3) that the death of the employee [i. e. the alleged result of the failure to provide proper medical treatment] was due to the neglect of the employer to provide proper care," a claim for an injury compensable under the exclusive provisions of the Workmen's Compensation Act is stated. *Id.* 176 A.2d at 688.

In *Vogel v. Jones & Laughlin Steel Corp.,* 221 Pa.Super. 157, 289 A.2d 158 (1972), an employee filed an action in trespass against his employer alleging negligence in the rendering of medical services at an employer provided clinic. The employer filed preliminary objections contending that the employee's exclusive remedy was under the Workmen's Compensation Act. The lower Court dismissed the action. On appeal, the Superior Court affirmed holding that the aggravation by improper medical treatment of a prior compensable injury is itself compensable under the Workmen's Compensation law.

Similarly, in *Kuhn v. Director General of Railroads,* 29 Dist. 695 (1920) it was held that once an employer undertakes, through its physicians, to provide proper medical care for on-the-job illnesses, any harm resulting from the failure to do so is compensable under the Pennsylvania Workmen's Compensation Act. In *Kuhn,* a railroad employee became insane while at work, and, after escaping from the two employer-provided physicians in whose care he had been placed, was struck and killed by a train.

In the case at bar, plaintiff claims his mental illness was caused by the administration of drugs as medical treatment provided while he was in the employ of the defendant. More specifically, plaintiff attributes his injury to defendant-employer's failure to provide him with proper medical care pursuant to the contractual assumption of duty to do so. On the basis of these allegations, plaintiff has clearly placed himself within the ambit of the Workmen's Compensation Act as interpreted by the Pennsylvania Supreme Court, in that he avers 1) the defendant-employer's assumption of a duty to provide proper medical care; 2) the failure to provide that care; and 3) resultant harm.

In attempting to skirt the clear implications of Baur I and Baur II, that improper medical treatment by an employer is a compensable accident, plaintiff seeks to place his injury in the same category as an exposure to those diseases not covered by the Occupational Disease Act whose gradual progression have been held not to have been accidents. *See, Billo v. Allegheny Steel Company,* 328 Pa. 97, 195 A. 110 (1937); *Powell v. Taylor,* 177 Pa.Super. 647, 112 A.2d 415 (1955). A fair reading of plaintiff's complaint, however, clearly establishes that the onset of the mental illness for which he seeks damages is traceable to the treatment received at the hands of his employer and was not the gradual progression of a disease that pre-existed defendant's administration of the drugs in question.

Plaintiff's next attack on defendant's motion for summary judgment is grounded on the exception to the Pennsylvania Workmen's Compensation Act for intentional injuries. Plaintiff concedes, however, that, "in this regard, 'intent' has reference to the consequences of an act, rather than the act itself." (Brief for Plaintiff at 14). To be within the exception, plaintiff must allege that the employer intended to cause the injurious result for which damages are claimed. No such intention on the part of the defendant is alleged in his complaint or in his brief in opposition to defend-

ant's summary judgment motion. Nor are there any averments from which the court can infer such an intention.

Plaintiff also contends that summary judgment is inappropriate because there is a genuine dispute as to the employer-employee relationship without specifically identifying the facts which are in dispute.

The Act defines an employee as follows:
"The term 'employee' as used in the act is declared to be synonymous with servant, and includes—

All natural persons, who perform services for another for a valuable consideration . . . ." (77 P.S. § 22).

The contract attached to the complaint as Exhibit A, after identifying the plaintiff as the "Player" and the defendant as the "Club", recites in pertinent part:
"1. The Club hereby employs the Player to render, and the Player agrees to render skilled services as a baseball player . . .

2. For the performance of the Player's services and promises hereunder the Club will pay the Player the sum of $1300 per month. . . ."

This can only be described as a contract of employment which in paragraph 4 of the complaint, plaintiff avers that he signed.

In paragraph 5, plaintiff alleges that he played baseball from 1966 through 1971 for minor league teams "owned, operated, subsidized and/or controlled by the defendant". Plaintiff's reference to the "Reading Team" in paragraph 7 of his complaint can only be construed to refer to a specific team described in paragraph 5 of the complaint. In paragraph 9 of the complaint, plaintiff states "Plaintiff was unconditionally released by the Defendant, presumably because of ineffective performance". In paragraph 15 and its subparagraphs, plaintiff states that his mental illness has been caused by defendant's breach of the contract attached as Exhibit A. In paragraph 15, subparagraph (c), plaintiff states that "Defendant through its Agents, servants and employees had control over Plaintiff's person . . ."; and in subsection (e),

plaintiff alleges that "Defendant through its Agents, servants and employees compelled Plaintiff to pitch on a regular basis when he was suffering from a major back problem . . .". These facts demonstrate the element of control which plaintiff acknowledges at page 12 of his brief to be the keystone to a determination of the existence of an employer-employee relationship.

In spite of these seemingly unequivocal averments, the plaintiff in his brief (pp. 12–13) suggests that defendant may not have been his employer after all by reason of his assignment to the Reading and Eugene teams. Any doubt concerning the effect of these assignments is dispelled by the testimony of defendant's Vice President and General Manager who explained that at the time plaintiff was with Reading, it was a wholly owned subsidiary or division of the defendant and that it had a player's development contract with Eugene. But in both cases, all field personnel, including players, manager, trainers and coaches, were hired, controlled and paid by the defendant. (Owens dep. 23–34).

Finally, plaintiff argues that the Workmen's Compensation Act was not intended to apply to "high priced athletes". (plaintiff's brief p. 14). But the Act makes no such distinction. It applies to all employees regardless of their earnings. If professional athletes were excluded from coverage, then hundreds and possibly thousands of low as well as high priced athletes on Major and Minor League Teams would be deprived of the humanitarian benefits and protection the Act affords. My research has failed to disclose any cases excluding professional sports or players from Workmen's Compensation coverage. Indeed, the cases are to the contrary. *See, e. g., United States Fidelity & Guaranty Company v. Indemnity Insurance Company of North America,* 271 F.2d 955 (5th Cir. 1959) (Workmen's Compensation covers minor league baseball player killed in a highway accident en route to team to which he was traded). *Brinkman v. Buffalo Bills Football Club–Division of Highwood Service,*

*Inc.,* 433 F.Supp. 699 (W.D.N.Y.1977) (professional football player's sole remedy for negligent medical treatment was under Workmen's Compensation Law). "A professional baseball league is a 'business operated for gain or profit' within the meaning of a compensation act, so as to entitle one employed as a player on one of the constituent clubs to compensation for injuries sustained in the course of employment". 81 Am.Jur.2d 803.

It is my conclusion that the exclusive remedy for plaintiff's injury is the Pennsylvania Workmen's Compensation Act.

Accordingly, defendant's motion for summary judgment will be granted.