**Eugene R. KOHR and Elaine Kohr, his wife, et al.**

v.

**RAYBESTOS–MANHATTAN, INC., et al.**

**Civ. A. No. 78–3942.**

United States District Court, E. D. Pennsylvania.

Jan. 14, 1981.

Timothy Bolton, Philadelphia, Pa., for plaintiffs.

Edward Greer, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

In a previous memorandum and order this Court denied a motion for summary judgment by defendant Raybestos-Manhattan (RM) on the grounds that a genuine issue of material fact concerning the date on which plaintiffs' claims arose precluded entry of summary judgment. *Kohr v. Johns-Manville Corp.*, 87 F.R.D. 750 (E.D. Pa.1980). *See* Fed.R.Civ.P. 56(c) and *Hollinger v. Wagner Mining Equipment Co.*, 505 F.Supp. 894 (E.D.Pa.1981). RM, now moving for reconsideration, argues that the issue of when plaintiffs' claims arose is crucial only to cross-claims of codefendants against RM but not as to plaintiffs' claims since the employer "has always enjoyed immunity from suit by an employee in a tort action". Assuming but not conceding for present purposes that RM correctly summarizes relevant law, the Court cannot grant summary judgment for reasons separate and apart from the basis of the original memorandum.

For example, the Workmen's Compensation defense does not bar recovery for tort liability of RM as a manufacturer of asbestos products. Deposition testimony of RM's purchasing manager indicated that an RM plant in Marshville, North Carolina, produc-

ed asbestos yarn sold to the Manheim, Pennsylvania, plant where plaintiffs worked. Apparently RM stood in the dual capacity of both manufacturer and employer to plaintiffs. As plaintiffs' employer RM may well be able to invoke the Workmen's Compensation Act as a defense. As a manufacturer of an allegedly defective product, RM's employment relationship will be irrelevant unless it can show that it manufactured the product solely for its own use. *See Douglas v. E. & J. Gallo Winery*, 69 Cal.App.3d 103, 137 Cal.Rptr. 797 (1977) and *Mercer v. Uniroyal Inc.*, 49 Ohio App.2d 279, 361 N.E.2d 492 (1976).

Notwithstanding state laws providing that Workmen's Compensation Acts comprise the only recovery available by an injured employee against his employer, many courts have held that an employee may sue the employer in tort for manufacturing a defective product for several reasons. Allowing the employee to recover focuses on the parties' status, the actual predicate of Workmen's Compensation statutes, which

> rest[ ] upon the ... conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages, and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured.

*Cudahy Packing Co. v. Parramore*, 263 U.S. 418, 423, 44 S.Ct. 153, 154, 68 L.Ed. 366 (1923). The employer remains responsible for his own negligent acts and omissions distinct from ones arising out of the employment relationship. A manufacturer of defective products should not escape liability simply because of an employment relationship with the injured party. To excuse the manufacturer/employer from liability allows the tortfeasor to use the Workmen's Compensation Act as a shield against prod-

ucts liability negligence, limits the remedy of an injured employee beyond the purposes of the Workmen's Compensation Act, undermines the deterrent value of imposing liability on negligent manufacturers of defective products, and relieves the manufacturer of liability simply because of the "chance circumstance" that the manufacturer also happens to be an employer of the injured party. *See Douglas v. E. & J. Gallo Winery, supra*, and *Mercer v. Uniroyal, Inc., supra*. Permitting the employer to elude responsibility for manufacturing a defective product also contravenes the basic principle of "assigning and imposing ultimate liability for negligence upon the person primarily responsible therefor". *Meuller v. Jeffrey Manufacturing Co.*, 494 F.Supp. 275, 278 (E.D.Pa.1980). Although an employee may be deemed to have accepted employment conditions, including workmen's compensation, to conclude that he also waived his right to bring a products liability action against a negligent manufacturer who coincidentally happens to be his employer would be unfair and unrealistic. *Douglas v. E. & J. Gallo Winery, supra*. Finally, Workmen's Compensation statutes derogate from the employee's common law rights, and as such, should not be construed to eliminate rights beyond which the *quid pro quo* anticipated. *Zimmer v. Casey*, 296 Pa. 529, 146 A. 130 (1929), *Stevenson v. Westmoreland Coal Co.*, 146 Pa.Super. 32, 21 A.2d 468 (1941), *aff'd*, 344 Pa. 561, 26 A.2d 199 (1942).

In an analogous situation, the Supreme Court has held that, notwithstanding the exclusivity of the remedies in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905, a person employed by a shipowner as a longshoreman could sue the shipowner for personal injuries sustained as a result of the ship's unseaworthiness. In *Jackson v. Lykes Bros. Steamship Co.*, 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967) plaintiff's decedent inhaled noxious gases while working as a longshoreman; in *Reed v. Steamship Yaka*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), a plank in one of the ship's pallets broke and injured plaintiff. The court observed that

the hazards of marine service, the helplessness of the men to ward off the perils of the unseaworthiness, the harshness of forcing them to shoulder their losses alone, and the broad range of the "humanitarian policy" of the doctrine of seaworthiness

compelled this conclusion and further held that Congress did not intend "to take away from longshoremen the traditional remedies of the sea" so that recovery for unseaworthiness could be had notwithstanding the availability of compensation. *Id.* at 413, 83 S.Ct. at 1352. Similarly, the adoption of strict liability for the manufacture of defective products and the underlying policies thereof evidence an intent to allow all persons to recover for injuries sustained by a defective product. *See* Restatement (Second) of Torts, § 402A, and *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). The fortuity of an employment relationship does not abrogate these policies.

■ However, a "single or occasional disconnected act" does not automatically expose a manufacturer/employer to liability:

The defendant who designs or manufactures a product for his own use and subsequently does sell an extra one of the products to his neighbor or to a similar business is not thereby subjected to manufacturers' liability when his own employee is injured in using the retained product. On the other hand, manufacturers' liability clearly arises where plaintiff employee is injured in using a product designed and manufactured by his employer primarily for sale to the general public and only incidentally used in the defendant's other activities. In between [the] extremes, the matter must be resolved on the facts of the particular case. The proper standard for determining whether a defendant is engaged in manufacturing so as to make applicable the manufacturers' liability imposed hereunder is the exercise of judgment on a case by case basis to decide if the manufacturing by the particular defendant is such as to justify the conclusion that it is part and parcel of an activity which occupies

the effort, attention and time of the defendant for the purpose of possible profit on a continuing basis.

*Douglas v. E. & J. Gallo Winery*, 69 Cal. App.3d at 113, 137 Cal.Rptr. at 803. Whether RM engages in making asbestos yarn and thereby exposing it to liability to employees as a manufacturer comprises a genuine issue as to a material fact. Summary judgment must be denied.

■ Admittedly, Pennsylvania courts do not appear to have ruled on the issue of dual capacity. In the absence of applicable state precedent, federal courts, sitting in diversity, have the power and duty to ascertain and apply state law. *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940), *United States v. D'Amato*, 436 F.2d 52 (3d Cir. 1970).

■ The federal court should "predict but not form" state law, *Samuelson v. Susen*, 576 F.2d 546 (3d Cir. 1978), *Keystone Aeronautic Corp. v. R. J. Enstrom Corp.*, 499 F.2d 146 (3d Cir. 1974), *Beavers v. West Penn Power Co.*, 436 F.2d 869 (3d Cir. 1971), and, in the absence of applicable state precedent, use all available data, including the Restatements, treatises, law reviews and authority from other jurisdictions. *Holcomb Construction Co. v. Armstrong*, 590 F.2d 811 (9th Cir. 1979), *Winston Corp. v. Continental Gas Co.*, 508 F.2d 1298 (6th Cir.), *cert. denied*, 423 U.S. 914, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975), *State Farm Mutual Automobile Insurance Co. v. Jackson*, 346 F.2d 484 (8th Cir. 1965), *Ricciuti v. Voltac Tubes, Inc.*, 277 F.2d 809 (2d Cir. 1960). Where appropriate, federal courts may assume that state law will follow the majority rule. *Glassman Construction Co. v. Fidelity Casualty Co. of New York*, 356 F.2d 340, 123 U.S.App.D.C. 1, *cert. denied*, 384 U.S. 987, 86 S.Ct. 1890, 16 L.Ed.2d 1005 (1966), *Co-Build Companies, Inc. v. Virgin Islands Refinery Corp.*, 570 F.2d 492 (3d Cir. 1978). Given express adoption of Section 402A of the Restatement (Second) of Torts by Pennsylvania courts, the "prediction" that Pennsylvania law will recognize the dual capacity of an employer who also manufactures

defective goods seems reasonable. *Hahn v. Atlantic Richfield Co.*, 625 F.2d 1095 (3d Cir. 1980). Whether defendant RM acted as both manufacturer and employer to plaintiffs need not be decided presently, but this genuine issue of material fact clearly prevents entry of summary judgment.