**Eugene KOHR, et al.,**

v.

**RAYBESTOS-MANHATTAN, INC.**

**Rose DeCIO,**

v.

**JOHNS-MANVILLE CORP., et al.**

**Civ. A. Nos. 78–3942, 79–4139.**

United States District Court,
E. D. Pennsylvania.

Sept. 21, 1981.

Before WEINER, TROUTMAN, NEW-COMER and BECHTLE, District Judges.

## MEMORANDUM OPINION

WEINER, District Judge.

Presented to us in these and a number of other cases are claims of products liability personal injury arising out of the alleged exposure of the plaintiffs, or their spouses or decedents, while employed by the defendants, to asbestos or asbestos products produced and/or sold by the defendants.

The defendants assert as a defense to these actions the Pennsylvania Workmen's Compensation Act's exclusivity of remedy provision, which they contend provides an employee's sole legal means for recovery from his employer for work related injuries, and which they further contend thus precludes the plaintiffs from bringing these actions. Plaintiffs urge us to adopt the dual capacity theory, under which the defendants, in their capacity as manufacturers of products which allegedly caused injury to the plaintiffs, would be subject to products liability, despite the limitations of the Workmen's Compensation Act.

Thus we are called upon to consider the issue of the defendants' dual capacity as both employers of those injured and manufacturers of the products allegedly causing injury, and the impact, if any, of that dual capacity on the Pennsylvania Workmen's Compensation Act and the doctrine of products liability. Intertwined with this problem is the question of how to balance two of the tensions inherent in our federal constitutional system of government: that resulting from our dual, independent federal and state court systems, and that resulting from the separation of governmental powers into three co-equal branches.

As an exceptionally large number of diversity jurisdiction cases claiming asbestos related injury have been filed in this district, including many in which the dual capacity issue has been raised, and in order to have uniformity, if possible, among the judges of the court with regard to dual capacity, this panel was designated by the Chief Judge to hear argument on the issue.[1]

## I

Due respect on the part of the federal government, including the judiciary, for the sovereignty of the individual states is the essence of federalism. Thus, as a federal court exercising diversity jurisdiction, we are compelled to follow state law. As is a state court, we are guided in our deliberations by legislative enactment and judicial precedents, but unlike a state court, we are not free to overrule existing state precedent or chart the future course of state law in such manner as we may see fit.

■ Likewise, due to the pervasive scheme of checks and balances found in both the federal and state, including Pennsylvania, constitutions, and designed to prevent accumulation of excessive power in any one branch of government, courts must defer to the will of the legislature in interpreting the reach of statutory provisions and determining the scope of the common law as it may be legislatively modified.

Consequently, though courts may at times desire to forge ahead with the law in an attempt to keep pace with an ever evolving modern society, we may be circumscribed in our ability to do so by the dictates of the Constitution and the mandate of prior judicial rulings. It is precisely such a dilemma with regard to the Pennsylvania Workmen's Compensation Act with which we are presented by these cases, for guided by these precepts, we must determine the extent of the exclusivity of remedy provision of that Act when asserted as a defense to an action for products liability.

1. There are currently pending 114 cases involving 350 plaintiffs.

## II

### A

The right of an employee to compensation for accidentally inflicted work related injury or death is governed by the Pennsylvania Workmen's Compensation Act, 77 P.S. § 481(a), which provides as follows:

"The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representatives, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death ... or occupational disease...."

■ Thus, by its terms, the Act provides the sole and exclusive remedy for injuries within its scope. *Wagner v. National Indemnity Co.*, 492 Pa. 154, 422 A.2d 1061 (1980); *Socha v. Metz*, 385 Pa. 632, 123 A.2d 837 (1956). *See, Bayless v. Phila. National League Club*, 472 F.Supp. 625 (E.D.Pa. 1979).

"As a broad, remedial statute, the act was passed to protect employees and their families by insuring a quick and certain payment for work-related injuries without having to resort to the courts,

\*　\*　\*　\*　\*　\*

[B]oth the employer and the employee relinquished certain rights to obtain other advantages. For the worker, he no longer had to prove negligence, in return, the employee had to accept a limited, though certain recovery. The employer, on the other hand, guaranteed compensation to an injured employee in return for the exclusivity of the workmen's compensation liability to its employees."

*Wagner v. National Indemnity Co.*, 492 Pa. 154, 422 A.2d 1061, 1065 (1980).

While an employer is liable without regard to negligence or fault, it is not a purpose of the Act to insure the life and health of the employee. *Monahan v. Seeds and Durham*, 336 Pa. 62, 6 A.2d 889 (1939). The Act has the intended effect of having

the economic burden resulting from industrial accidents borne by industry, and ultimately, the public, rather than the injured worker. *Girardi v. Penna. Power and Light Co.*, 174 F.Supp. 813, 916 (1959), *aff'd, sub nom, Girardi v. Lipsett, Inc.*, 275 F.2d 492 (3d Cir.), *cert. denied* 364 U.S. 821, 81 S.Ct. 56, 5 L.Ed.2d 50 (1960). Thus, the Act is a humanitarian, remedial measure, and must be liberally construed. *Workmen's Compensation Appeal Board v. Overmyer Mold*, 473 Pa. 369, 374–75, 374 A.2d 689, 691 (1977).

## B

The law of products liability recognizes that "[t]oday ... a manufacturer ... is effectively the guarantor of his product's safety.... [A] manufacturer, by marketing and advertising his product, impliedly represents that it is safe for its intended use.... No societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect." *Salvador v. Atlantic Boiler Co.*, 457 Pa. 24, 32, 319 A.2d 903, 907 (1974).

■ Thus, the Pennsylvania Supreme Court has adopted the modern view that the "risk of loss must be placed upon the supplier of the defective product without regard to fault...." *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978). This change in legal philosophy from the principle of caveat emptor which prevailed in the nineteenth, and indeed, well into the twentieth, century marketplace was inspired by the "development of a sophisticated and complex industrial society with its proliferation of new products and vast changes in the private enterprise system...." *Id.* at 553, 391 A.2d at 1023. In an "era of giant corporate structures" it is now the consumer, not the manufacturer, who must be protected. "The realities of our economic society as it exists today forces the conclusion that the risk of loss for injury resulting from defective products should be borne by the suppliers, principally because they are in a position to absorb the loss by distributing it as a cost of doing business." *Id.*

## C

Under the dual capacity doctrine, "an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer." 2A Larson, *Law of Workmen's Compensation*, § 72–80, at p. 14–112. The rationale behind the dual capacity theory as presented to us in these cases is that the existence of an employment relationship between the injured party and the manufacturer of the product causing the injury is of reduced importance when viewed in the context of a products liability action. As applied to products liability cases, the theory reasons that since the employer is also the manufacturer of the product which allegedly caused injury and which would thus give rise to products liability were it not for the existence of the employment relationship, liability ought not to be avoided merely because of that employment relationship. Rather, the theory proposes, the societal interests which led to the adoption of products liability are so strong as to transcend those interests which are behind the exclusivity of remedy provision of the Workmen's Compensation Act.

In other words, dual capacity theory states, with the advent of products liability, an employer, in its capacity as a manufacturer, owes an additional, and independent, legal obligation to its employees, as users of the employer-manufacturer's product, beyond that which it owes to its employees solely as a result of their employment relationship, and that additional obligation may give rise to product liability actions despite the exclusivity provisions of the Workmen's Compensation Act.

Moreover, since the manufacturer's legal duty to act as the "guarantor" of a product's safety exists independently of the manufacturer's status as an employer, and extends to all foreseeable users of the prod-

uct other than the manufacturer's employees, plaintiffs argue that it is inequitable that those employees be limited in their ability to seek compensation for their injuries. It is further asserted that unless the dual capacity theory is adopted, manufacturers will be able to avoid responsibility for the consequences of their placing defective products into the marketplace, at least as regards their employees, and thereby subvert the salutary purposes behind the imposition of products liability.

Proponents of the theory contend that the additional legal duty of products liability ought to be imposed on manufacturer-employers, despite the language of the Workmen's Compensation Act, because the Pennsylvania Supreme Court, if faced with the same question now before us, would recognize the social policy justifications which support the dual capacity doctrine and thus allow products liability actions to be brought by employees against their manufacturers-employers.

### III

#### A

■■■ Federal courts sitting in diversity cases must ascertain and apply state law. *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When a novel issue of law or theory of interpretation is presented however, and applicable state precedent is therefore absent, that task becomes all the more difficult, and federal courts are placed in the position of having to predict the outcome likely to be reached by the state court. In order to do so, the federal courts may look to all resources, including the Restatements, treatises, law reviews, and well reasoned authority from other jurisdictions. *See, City of Aurora, Colo. v. Bechtel Corp.*, 599 F.2d 382 (10 Cir., 1979); *Winston Corp. v. Continental Gas Co.*, 508 F.2d 1298 (6th Cir., 1975), *cert. denied*, 423 U.S. 914, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975); *Glassman Construction Co. v. Fidelity and Casualty Co. of New York*, D.C. Cir., 356 F.2d 340, *cert.*

*denied*, 384 U.S. 987, 86 S.Ct. 1890, 16 L.Ed.2d 1005 (1966). Nevertheless, the federal courts must remain careful to predict, but not form, state law. *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.*, 499 F.2d 146 (3d Cir. 1974).

#### B

■■■ When undertaking the task of statutory construction, it is the duty of a court to ascertain and effectuate the intention of the legislature. *Commonwealth Higher Education Assistance Agency v. Abington Memorial Hospital*, 478 Pa. 514, 521, 387 A.2d 440, 444 (1978) (Eagen, C. J., and O'Brien, J., concurring). Under Pennsylvania law, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," 1 Pa.C.S. § 1903(a), and "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). *Commonwealth v. Hill*, 481 Pa. 37, 42, n. 6, 391 A.2d 1303, 1306, n. 6 (1978). Although the necessity and object of the statute, its legislative history, the former law, and other factors are to be considered by a court when the words of the statute are not explicit, *see* 1 Pa.C.S. § 1921(c), resort to such indicia of legislative intent is inappropriate when the statute's language is clear and unambiguous. *See, The Townships of Springdale and Wilkens v. Mowod*, 23 Pa.Cmwlth. 298, 352 A.2d 194 (1976), *reversed on other grounds*, 474 Pa. 82, 376 A.2d 983 (1977). "When the statute's meaning is plain ... we cannot look to legislative history when to do so would alter that statute's plain meaning." *Hellertown Mfg. Co. v. Commonwealth*, 480 Pa. 358, 365, 390 A.2d 732, 735 (1978). Moreover "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *Paxon Maymar, Inc. v. Penna. Liquor Control Bd.*, 11 Pa.Cmwlth. 136, 141, 312 A.2d 115, 118 (1973).

#### C

No Pennsylvania state court case of which we are aware has as yet decided the

dual capacity issue now before this court. For guidance we have therefore not only studied Judge Troutman's opinion in *Kohr v. Raybestos-Manhattan, Inc.,* 505 F.Supp. 159 (1981), in which he predicted that Pennsylvania would adopt dual capacity, and those Pennsylvania decisions, cited above, which have interpreted the Workmen's Compensation Act and the products liability doctrine, but have also considered cases from other jurisdictions in which the dual capacity doctrine was at issue.

Pennsylvania courts have shown extreme reluctance to alter the workmen's compensation system of certain, but limited and exclusive recovery from employers for work related injury. Thus, the Pennsylvania Supreme Court has upheld that section of the Workmen's Compensation Act, 77 P.S. § 481(b), pursuant to which an employee may not join his employer as a defendant in an action against a third party, nor may that third party seek contribution or indemnity from the employer. *Tsarnas v. Jones & Laughlin Steel Corp.,* 488 Pa. 513, 518, 412 A.2d 1094, 1096 (1980). In addition, the Pennsylvania Supreme Court has recognized only a very limited intentional tort exception to the Act, *see, Evans v. Allentown Portland Cement Co.,* 433 Pa. 595, 252 A.2d 646 (1969), and the Superior Court has rejected as an exception to the Act the concept of enterprise liability, a theory somewhat analogous to dual capacity in that it too seeks to identify distinguishable functions of an employer in order to impose liability. *Berger v. U.G.I. Corp.,* —— Pa.Super. ——, 427 A.2d 1161 (1981).

Statutory provisions similar to Pennsylvania's, which limit an employee's legal actions against his employer are a part of the Workmen's Compensation Acts of most, if not all states. Among them is California, yet that state's Court of Appeal, in a thoughtful opinion, nonetheless adopted the dual capacity doctrine. *See, Douglas v. E. & J. Gallo Winery,* 69 Cal.App.3d 103, 137 Cal.Rptr. 797 (1977). An Ohio appellate court has also adopted the doctrine, *see, Mercer v. Uniroyal, Inc.,* 49 Ohio App.2d 279, 361 N.E.2d 492 (1976), and the United States Supreme Court has employed an analogous theory with regard to maritime law and the Longshoremen's and Harborworkers' Compensation Act in *Reed v. The Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). However, the great majority of courts in other states which have ruled on dual capacity have rejected the theory. *See, e. g., Billy v. Consolidated Machine Tool Corp.,* 51 N.Y.2d 152, 432 N.Y. S.2d 879, 412 N.E.2d 934 (1980); *Longever v. Revere Copper and Brass, Inc.,* —— Mass. ——, 408 N.E.2d 857 (1980); *State v. Purdy,* 601 P.2d 258 (Alaska 1979); *McAlister v. Methodist Hospital of Memphis,* 550 S.W.2d 240 (Tenn.1977); *Needham v. Fred's Frozen Foods,* 171 Ind.App. 671, 359 N.E.2d 544 (1977); *Winkler v. Hyster Co.,* 54 Ill.App.3d 282, 369 N.E.2d 606 (1977). Federal courts in other jurisdictions have also refused to adopt dual capacity. *See, Kottis v. United States Steel Corp.,* 543 F.2d 22 (7th Cir. 1976), *cert. denied,* 430 U.S. 916, 97 S.Ct. 1328, 51 L.Ed.2d 594 (1977); *Strickland v. Textron, Inc.,* 433 F.Supp. 326 (D.S.C.1977); *Provo v. Bunker Hill Co.,* 393 F.Supp. 778 (D.Idaho 1975).

Although review of the opinions from other states is instructive, and the reasoning of other courts might perhaps prove persuasive were we to directly address the merits of recognizing dual capacity in Pennsylvania, they are of little help to us with regard to our real inquiry: ascertaining, or if necessary predicting, and then applying, *Pennsylvania* law.

## IV

■ Mindful of the proper rule to be played by a federal court in applying state law, and abiding by the rules of statutory construction outlined above, it is manifest that this federal court cannot ignore so unambiguous and plain a meaning as that of the legislatively enacted Workmen's Compensation Act, which seeks to limit an employer's liability, merely in order to effectuate a judicially created legal theory which seeks to expand a manufacturer's liability. Moreover, judicial expansion of a statute is particularly inappropriate when

initiated by a federal court acting in the absence of any direction or signal to do so on the part of the state courts. Accordingly, since the Workmen's Compensation Act clearly provides the exclusive remedy for employee work related injury, and the dual capacity theory has not been recognized by Pennsylvania courts, we are constrained to conclude that the Act precludes an employee's products liability action against his employer for injury sustained during the course of and related to his employment.

In reaching this decision, we are not immune to the considerable appeal which the dual capacity doctrine possesses, nor are we unmindful of the seeming inequity of the law in permitting those workers injured by exposure to asbestos *not* produced by their employers to seek, and perhaps recover, substantial monetary damages, while preventing those workers whose employers *were* the manufacturers of the asbestos which allegedly caused them injury from seeking compensation beyond that provided by workmen's compensation. Additionally, we are not unaware that under the present state of the law, merely because the victims of a manufacturer's defective products are that manufacturer's own employees, the manufacturer can avoid that products liability to which it would otherwise be subject. We have considered as well that the Workmen's Compensation Act is designed to protect workers and thus ought to be liberally construed, and that with the advent of products liability, society benefited when the risk of loss from injury caused by defective products shifted from the injured person to the manufacturer of the product causing injury. Nevertheless, such changes in the law as may be deemed necessary for reasons of public policy ought to be effectuated by the state legislature, which enacted the clearly unambiguous Workmen's Compensation Act, or by the courts of Pennsylvania, and not by a federal court exercising diversity jurisdiction.

Furthermore, for us to hold an employer-manufacturer liable under the dual capacity theory, and thereby judicially carve out an exception to the exclusive remedy provided for in the Workmen's Compensation Act, would take this federal court beyond the bounds of mere *prediction* of Pennsylvania law to its actual *formation*. Although the Pennsylvania Supreme Court may, in the future, adopt the dual capacity doctrine, that simply has not yet occurred. Since there is at this time no indication that the Pennsylvania courts actually will *or even are likely* to judicially expand the rights of employees to bring suit on a dual capacity theory against their manufacturer-employers, for the federal courts to hold otherwise would be an exercise more in gross speculation than in mere prediction of the future development of Pennsylvania law. If such jurisprudential innovation, progressive as it may be, is to be instituted by a court, such action must be left to the only court which in our federal system may exercise such discretion, the Pennsylvania Supreme Court.

V

While the federal judiciary must not shirk its duty to fairly adjudicate all properly brought justiciable cases and controversies, care must be taken lest we forget that there are at times limits on the policy making role which may be had by the federal courts. Despite the exercise of policy making restraint, however, federal judicial decisions often do have the inevitable effect of forming public policy. Such is the case here, of course, as the result of our decision is that the dual capacity doctrine remains unavailable to plaintiffs in Pennsylvania. It is not our place though to accept or reject the doctrine on its merits, and we have done no more than merely apply the current law of Pennsylvania, as adopted by the legislature and courts of the Commonwealth. Thus, it is with those bodies that the opportunity properly lies for any future action on the important issues of law and public policy raised in these cases.

NEWCOMER and BECHTLE, District Judges, concur.

TROUTMAN, District Judge, concurring.

Of a deceased jurist, a distinguished speaker recently said:

"His ability to analyze a particular legal situation was most unusual. The microscope of his mind was so powerful, his own special focus so accurate, he could readily see the *configurations* that would ordinarily escape the attention of a lesser person." (emphasis added).

Lacking such talents, this Court in *Kohr v. Raybestos-Manhattan, Inc.*, 505 F.Supp. 159 (E.D.Pa.1981), approached the problem of predicting Pennsylvania law as regards the future adoption of the "dual capacity theory". We there concerned ourselves primarily with the equitable considerations involved, being the principal issues treated in briefs submitted. The inequities, so heavily relied upon by this Court, incident to a contrary result have been recognized in the Panel opinion (pp. 1075 and 1076).

However, in presenting the issues to the Panel additional "configurations" have appeared, additional questions have been raised, additional authorities cited and additional considerations treated both by way of briefs filed and oral argument. These additional issues and their resolution by the Panel are persuasive. Equally important are the additional precedents cited to or independently discovered by the Panel establishing that at least six state courts and three federal courts have rejected the dual capacity doctrine (p. 1075).[1] Additionally, we agree that the Pennsylvania law "ought" to be declared and enunciated by the Pennsylvania courts as opposed to a federal court (p. 1076). We agree that the "actual formation" of Pennsylvania law should be the function of the Pennsylvania Legislature and/or the Pennsylvania courts (p. 1076).[2] We agree that the federal courts should not directly or indirectly, intentionally or inadvertently, become involved in a "policy-making role" (p. 1075), if such result can be avoided while at the same time discharging the "duty" resting upon the court in a given situation. The Panel opinion avoids this pitfall by applying what it defines as "the current law of Pennsylvania" (p. 1076).

Certain of the "configurations" thus treated by the Panel "escaped the attention of (this) lesser person" in reaching our conclusions in *Kohr*. Erroneously treating the equities of the situation as our primary compass, we ruled that the circumstances as then and there presented and briefed suggested that Pennsylvania would recognize the dual capacity doctrine and apply it to the situation at bar. Regrettably, the clamor precipitated by the dual capacity issue eclipsed the fact that this Court previously denied defendant's motion for summary judgment on other grounds in its initial opinion, reported at 87 F.R.D. 750 (E.D.Pa. 1980), and merely cited dual capacity as an additional basis for denial after defendant moved for reconsideration.

Consistent with the Panel opinion, this Court has previously strictly construed the statute.[3] The inn of inequities in which we previously found shelter was for the night only; it did not end the journey. The proceedings before the Panel have alerted us to the fact that there *are* substantial landmarks to guide us and that our heavy reliance upon the "compass" of inequities was misplaced.

For the reasons stated we concur in the Panel opinion and to that extent reverse our decision in *Kohr*. Our concurrence renders moot, we believe, defendant's pending motion for certification of appeal to the Circuit Court. It does not affect our denial of defendant's motion for summary judgment on other grounds.

---

1. In *Kohr* we stated that "federal courts may assume that state law will follow the majority rule". 505 F.Supp. 159, 162 (E.D.Pa.1981). We were then unaware of what now appears to be the "majority" rule as demonstrated in the Panel opinion (p. 1075).

2. We so stated in *Kohr*. 505 F.Supp. 159, 162 (E.D.Pa.1981).

3. *Dech v. Rouselle Corp.*, 512 F.Supp. 1024 (E.D.Pa.1981).