542 A.2d 1041

West Penn Power Company, Appellant *v.* Springdale Township et al., Appellees.

Submitted on briefs January 15, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Lawrence A. Demase,* with him, *C. Andrew Mc-Ghee, Rose, Schmidt, Chapman, Duff & Hasley;* Of Counsel: *Thomas K. Henderson,* for appellant.

No appearance for appellees.

OPINION BY SENIOR JUDGE BARBIERI, May 13, 1988:

West Penn Power Company (West Penn) appeals an order of the Allegheny County Court of Common Pleas denying its motion for post-trial relief from an order holding that some or all of West Penn's Springdale generating plant was subject to local real estate taxes for the years 1978 to the present.

Springdale Township (Township) appealed assessments for West Penn's Springdale plant for 1978 and subsequent years to the Allegheny County Board of Property Assessment, Appeals and Review (Board). The Township claimed that portions of the plant property are not used in furnishing public utility service and therefore subject to local realty tax. The Board held that the property was taxable under the Public Utility Realty Tax Act[1] (PURTA) for the years in question and therefore exempt from local real estate taxes.

---

[1] Act of March 10, 1970, P.L. 168, 72 P.S. §§3271-3278 amended and placed under the Tax Reform Code, Act of July 4, 1979, P.L. 60, *as amended,* 72 P.S. §§8101-A—8108-A.

On appeal, the trial court held that property at the plant which was not in actual use was not taxable under PURTA and remanded the case to the Board to determine what property was not in actual use during the years in question. This appeal followed.[2]

Prior to 1968, real property essential to the operation of a public utility was generally exempt from local real estate taxes.[3] Article VIII, Section 4 of the Pennsylvania Constitution was adopted at the Constitutional Convention of 1967-68.[4] The Constitutional amendment was adopted in response to a concern on the part of local taxing authorities that the exemption was depriving them of a substantial source of revenue. *See, American Telephone and Telegraph Co.*

Article VIII, Section 4 of the Pennsylvania Constitution provides in pertinent part, as follows:

---

[2] West Penn filed a petition for permission to appeal an interlocutory order pursuant to Pa. R.A.P. 1311(b). We subsequently granted the petition, staying all matters pending in the trial court.

[3] The Pennsylvania Supreme Court created an exemption from property taxes for public utilities in *Coatesville Gas Co. v. County of Chester,* 97 Pa. 476 (1881). The purpose of the exemption was to protect and subsidize emerging public service corporations which were essential to the well being of new and growing communities. *See* Comment, *Public Utility Taxation in Pennsylvania: Article VIII, Section 4, of the Constitution of Pennsylvania 1968,* 74 Dick. L. Rev. 274 (1969-70).

[4] Section 4 of Article VIII of the Pennsylvania Constitution was scheduled to take effect on July 1, 1970, unless the Legislature provided enabling legislation in accordance with the amendment prior to that date. The Legislature enacted PURTA on March 10, 1970, implementing the Constitutional provision. See, *Duquesne Light Co. v. Board of Property Assessment, Appeals and Review of Allegheny County,* 10 Pa. Commonwealth Ct. 41, 299 A.2d 660 (1973), rev'd sub nom. *American Telephone and Telegraph Co. v. Board of Property Assessment, Appeals and Review of Allegheny County,* 461 Pa. 716, 337 A.2d 844 (1975).

The real property of public utilities is subject to real estate taxes imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided shall, however, be in lieu of local taxes *upon its real property which is used or useful in furnishing its public utility service.* The amount raised annually by such gross receipts or other special taxes shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided. (Emphasis added.)

Article VIII, Section 4 was designed to permit local taxation of public utilities while avoiding the imposition of real estate taxes directly upon the utilities by local taxing authorities. Payment of real estate taxes to the local taxing authority where a public utility was located would result in a windfall to the locality. This is because the taxation would be reflected in the utility's rates to consumers both inside and outside of the locality where the utility is situated.[5]

There was an existing gross receipts tax on intrastate activities of most public utilities[6] at the time Article VIII, Section 4 was adopted. Rather than expanding the existing gross receipts tax in order to implement the

---

[5] *American Telephone and Telegraph Co., citing* 1 Debates of the Pennsylvania Constitutional Convention of 1967-68, at 429 (1969) (remarks of Delegate Woodring, co-chairman of the Committee on Taxation and State Finance).

[6] Act of June 1, 1889, P.L. 420, §23 *as amended,* repealed by Act of March 4, 1971, P.L. 6, art. XI, §1103 and reenacted with some modifications by *id.* §1101, 72 P.S. §8101.

Constitutional provision, the Legislature enacted PURTA, "which imposed a state-wide property tax upon the 'depreciated value' of the real estate of public utilities." *American Telephone and Telegraph Co.* at 723, 724, 337 A.2d at 848 (citations omitted). Under Section 1107-A of PURTA, 72 P.S. §8107-A,[7] the Pennsylvania Department of Revenue distributes to local taxing authorities, a share of the tax collected.

Section 1102-A(b) of PURTA, 72 P.S. §8102-A(b) provides that a public utility is to pay to the State Treasurer, an annual tax upon the "state taxable value"[8] of its "utility realty". Utility realty is defined as:

> All lands, together with all buildings, towers, smokestacks [etc.] . . . and, all other structures and enclosures whatsoever which are physically affixed to the land . . . located within this Commonwealth and owned by a public utility . . . *which are used or are in the course of development or construction for use in the furnishing, including producing, storing, distributing or transporting, of public utility service. . . .*

Section 1101-A(3) of PURTA, 72 P.S. §8101-A(3) (emphasis added).

For the years in question, the Springdale plant[9] has been assessed by the Board as exempt from local real

---

[7] For a detailed explanation of how the Pennsylvania Department of Revenue distributes the PURTA tax to local taxing authorities, *See, School Districts of Deer Lakes and Allegheny Valley v. Kane,* 463 Pa. 554, 345 A.2d 658 (1975).

[8] State taxable value is defined in Section 1110-A(4) of PURTA, 72 P.S. §8102-A(4), as "[t]he cost of utility realty, less reserves for depreciation and depletion."

[9] West Penn is a subsidiary of the Allegheny Power System. West Penn's Springdale plant is located partly in the Township and partly in Springdale Borough on 47.8 acres along the Allegheny River. This appeal is limited to that portion of the plant which is located within the Township.

estate taxes and has paid PURTA taxes. The Township challenged the exempt classification of the Springdale plant for the years 1978 to the present, during which period the power generation at the Springdale plant was greatly reduced.[10]

Until the 1970's, the plant used coal to power its eight generators. Some of the coal-fired generators were retired in 1968, and others in 1972. In 1974 and 1975, the two remaining coal-fired generators which had been serviced by two high pressure boilers were converted to oil-fired units[11] and the remaining generators were removed.

In addition to the two generators and boilers, the Springdale plant has coal-handling facilities[12] which although unused for many years are still intact. The plant also has an oil-storage area, railroad sidings,[13] electric powerlines and a substation.[14]

---

[10] The output of the plant from 1978 until June of 1985 was as follows:

1978—488,111 or 483,111 megawatt hours
1979—132,748 megawatt hours
1980—27,775 megawatt hours
1981—10,661 megawatt hours
1982—3,087 megawatt hours
1983—0
1984—2,739 megawatt hours
Through June of 1985—0

[11] The two oil-fired generators and boilers are in that portion of the plant which is located in the Borough of Springdale but tubing and wiring from these generators and boilers located in that part of the plant on Township property serve these two generators and boilers. Notes of Testimony from June 27, 1985 hearing before the trial court (N.T.) at 84, 86.

[12] The Springdale plant has a coal stockpile area, conveyors to bring the coal into the plant and ash settling basins. N.T. at 76, 78.

[13] West Penn must pay Penn Central Railroad for the privilege of having railroad sidings. Conrail delivers oil and certain equipment to these sidings. N.T. at 90, 92.

[14] The Springdale plant has an active substation where power enters the plant by means of high tension lines, is reduced in voltage and sent out on a distribution network. N.T. at 77.

A review of the record reveals that after 1978, power generation at the Springdale plant decreased dramatically. From 1978 to 1982, the plant was used when West Penn was unable to otherwise meet its demands. The railroad sidings have been used only once since 1978, but the substation has continued to be used for switching and distributing power during the years in question.

By order entered August 23, 1983, the Pennsylvania Public Utility Commission (PUC) granted West Penn permission to place its Springdale plant in "cold reserve"[15] and directed it to submit a study as to the feasibility of renovating and improving the plant.[16] The study was to include the potential for conversion to coal or natural gas. The senior engineer in the generation planning department of Allegheny Power Service Inc., testified that the company was contemplating the possibility of returning the Springdale plant to a coal-fired operation.[17] Springdale's former plant manager testified further that this would entail use of all of the plant's acreage and facilities.[18]

According to West Penn's generating capacity plan, dated February 27, 1985, the Springdale plant would not have to be reactivated until 1991. However, there was testimony before the trial court that the plans are subject to change and that the Springdale plant may

---

[15] When placing a plant such as Springdale in cold reserve, water is drained from the boilers and replaced with an inert gas such as nitrogen. The plant however remains intact and is maintained in order that it may be operated, should the need arise.

[16] The PUC issued an initial order on May 27, 1983, placing the Springdale plant in cold reserve for a period of one year. The order entered August 23, 1983, placed the plant in cold reserve for an indefinite period of time.

[17] N.T. at 72.

[18] N.T. at 78.

need to be reactivated earlier than 1991.[19] Even though the Springdale plant is in cold reserve, West Penn maintains the equipment and, at the time of the hearing before the trial court, employed a work force of twenty-seven and expended approximately $1 million per year to keep the plant available for use in an emergency.[20] West Penn spent approximately 3.6 million dollars between 1978 and 1983, for maintenance on two condensers and a furnace at the plant.[21]

West Penn pays local realty tax on several plants which it has completely retired from service. Although the Springdale plant has been in cold reserve since 1983, West Penn contends that it should be subject to PURTA taxes and therefore exempt from local real estate taxes. In support of this contention, West Penn argues that its Springdale plant is utility realty used to furnish utility service within the meaning of PURTA and in the alternative that the PURTA exemption for local real estate taxation should be read to include property which is useful as well as used in furnishing utility service. West Penn further contends that the PUC's order that the plant be placed in cold reserve should render it exempt from local real estate taxes and that the plant should be tax exempt until such time as the PUC approves retirement.

The trial court determined that in the case of an electrical power plant, the definition of utility realty in PURTA applied only to real estate that was *currently* used to generate power. It then remanded the matter to the Board to determine what portions of the Springdale plant were actually used for generating power during the years 1978 to the present. We disagree with such a

---

[19] N.T. at 35-38.
[20] N.T. at 43, 49.
[21] N.T. at 43, 91.

narrow interpretation of the definition of utility realty in PURTA.

The PUC has supervisory and regulatory authority over all public utilities in accordance with its powers as set forth in Section 501 of the Public Utility Code (Code), 66 Pa. C. S. §501. Not only is the PUC responsible for setting rates but it is also charged with ensuring that public utilities provide adequate and continuous utility service. *Pennsylvania Public Utility Commission v. Philadelphia Electric Co.*, 501 Pa. 153, 460 A.2d 734 (1983). Further, the PUC regulates abandonment of public utility service. Section 1102(a) of the Code, 66 Pa. C. S. §1102(a).

At the time of the proceedings before the trial court, West Penn was not at liberty to retire its Springdale plant but was instead subject to a PUC order that the plant be kept in cold reserve and a study be conducted concerning the feasibility of renovating and improving it.

No doubt, as the trial court concluded, some portions of the Springdale plant were used since 1978, in the actual generation and distribution of power. However, the definition of utility realty in PURTA encompasses more than just the actual current provision of utility service. A plant which is placed in reserve in order to ensure adequate future utility service to the public is being used to furnish utility service as contemplated by PURTA.

Many years ago, our Supreme Court was faced with the issue of whether two electric plants which had been in reserve status over a period of time were subject to local real estate taxes. *Southern Electric Light and Power Co. v. Philadelphia*, 191 Pa. 170, 43 A. 123 (1899). In a per curiam opinion, the Court held that the exemption from such taxes covered lands used for manufacturing purposes but held in reserve until such time

as demand may increase. The Court in *Southern Electric* stated that the fact that property is held in reserve does not change its intended use as an electric company.

Although we well recognize that the decision in *Southern Electric* was rendered long before PURTA was enacted, the reasoning employed by the Supreme Court in that case is pertinent to the present one. West Penn is not only obligated to comply with the PUC's order but is also obligated to provide "reasonably continuous" service. Section 1501 of the Code, 66 Pa. C. S. §1501. According to its projections, West Penn may need to reactivate its Springdale plant in an emergency[22] situation or in order to ensure adequate service in the future. During the years in question, it has expended funds to both man and maintain the plant for these purposes. There is a great deal of difference between a plant which is in cold reserve and one which is retired and may be sold or used by the public utility for some purpose other than furnishing utility service. So long as West Penn holds the property for use as an electric power plant, it does not matter that the generators are not currently providing power to consumers. The property is still being "used" by the utility to ensure that it has adequate reserves so that it may provide continuous service to its consumers in the future. Therefore, the property is being used by the utility to furnish public utility service within the meaning of PURTA and is exempt from local real estate taxes.[23]

---

[22] The senior engineer for Allegheny Power Service Inc., testified before the trial court that during 1985, another of its plants placed in cold reserve was reactivated to meet a need for additional power and that the Springdale plant might need to be reactivated upon fairly short notice as well. N.T. at 50-51, 69.

[23] West Penn petitioned the PUC to place the Springdale plant in cold reserve in order to reduce both operating costs and

The definition of utility realty in Section 1101-A(3) of PURTA includes not only property "used" in furnishing public utility service but also property which is "in the course of development or construction for use, in the furnishing . . . of public utility service."

Although the PUC has approved cold reserve status for the Springdale plant, it continues to maintain regulatory authority over it. The PUC's order of May 27, 1983, initially granting cold reserve status to the Springdale plant, notes that there is a potential that the plant might need to be reactivated in 1988 and 1989. It further notes that based upon West Penn's records, the utility's reserve margin would be insufficient by 1990-1991, requiring the reactivation of the Springdale plant. Therefore, the PUC order holds it is essential that West Penn continue to maintain the Springdale plant to ensure its normal return to operation when needed. As we have noted, the order also requires West Penn to submit a study concerning reactivating the plant.

In its order entered August 23, 1983, the PUC refers to the study as follows:

> This study is intended to determine whether cost effective programs exist to improve productivity by increasing unit efficiency and availability and to extend the generating life of the plants[24] for as long as economically practical. We believe that the scope of the preliminary study should be broad enough to allow consideration of several improvement options including conversion to coal or natural gas as well as modifications or improvements to the turbine and steam system facilities.

---

deterioration. This decision was based on economical reasons and should not automatically mean that the property is no longer exempt from local real estate taxes.

[24] A study was ordered for the Springdale plant as well as another plant owned by West Penn.

The August 23, 1983, PUC order also contemplates the submission of further studies. West Penn is under order by the PUC to maintain its Springdale plant for future use of its consumers and to assess the potential for renovating and improving the plant. Therefore even were we to conclude that the Springdale plant was not "used" in furnishing public utility service, it is, by order of the PUC, in the course of development for use in the furnishing of utility service. As such it is exempt from local real estate taxes and instead subject to PURTA taxes.

Section 1104-A(a) of PURTA, 72 P.S. §8104-A(a), provides that payment of the tax "shall be in lieu of local taxes upon utility realty, as contemplated by Article VIII, Section 4 of the Constitution of Pennsylvania." As noted previously, this purpose of Article VIII, Section 4 was to obtain tax revenues for local taxing authorities while avoiding any windfall to the locality where the utility was located. PURTA accomplished these twin goals, by assigning collection to the Commonwealth which then distributes the reserves to all local taxing authorities. *American Telephone and Telegraph Co.* Our holding permits all local taxing authorities to share in the Springdale plant's taxable revenue therefore furthering the legislative intent behind PURTA.

The trial court's order held that portions of the property at the Springdale plant were taxable locally while any property in active use was subject to a PURTA tax on its "state taxable value". Although the plant lies partly in the Township and partly in the Borough of Springdale, the latter is not a party to the present action. We therefore assume the Borough has not attempted to subject that portion of the plant property located within its borders to local real estate taxes. The trial court's opinion could lead to a situation where all plant property within the Borough is subject to PURTA tax while

only portions of property in the Township are subject to the same tax.

Not only does the approach taken by the trial court lead to problems in uniformity of taxation between different taxing authorities, it also raises difficult questions of apportionment. For instance, what factors determine whether property was in active use during each tax year in question? Must a generator be operated for a mini- mum number of hours in order for it to qualify as utility realty under PURTA? We do not believe that in enact- ing PURTA, the Legislature intended local assessment boards to make such determinations.

If we were to uphold the trial court, local taxing au- thorities could conceivably tax locally those portions of active utility plants which may not have been used to actually provide power or other utility service during a particular year. Such an outcome would undoubtedly lead to a great deal of inconsistency and disorganization within the utility realty taxing structure.

In light of the foregoing discussion, we need not ad- dress the remaining issues raised by West Penn.[25] We conclude that the Springdale plant falls within the defi- nition of utility realty in Section 1101-A(3) of PURTA and is therefore exempt from local real estate taxation pursuant to Article VIII, Section 4 of the Pennsylvania Constitution. Accordingly, the order of the trial court denying West Penn's post-trial motion requesting a re- versal of the order of May 29, 1986, is reversed.

[25] West Penn urges us to hold that the PURTA exemption for local real estate should be read to include property which is "useful" as well as used in furnishing utility service. Payment of the PURTA tax is to be in lieu of local taxes upon realty "used or useful" in furnishing utility service as contemplated, by Article VIII, Section 4 of the Constitution of Pennsylvania. However, the omission of the term "useful" from the definition of utility realty in PURTA was clearly not an oversight on the part of the Legislature as such term was included in subparagraph (iv) Section 1101-A(3) of

## ORDER

AND NOW, this 13th day of May, 1988, that portion of the order of the Allegheny County Court of Common Pleas captioned at G. D. 80-29431 and dated September 10, 1986, denying West Penn Power Company's post-trial motion is hereby reversed.

PURTA, 72 P.S. §8101-A(3)(iv). Instead of including the term useful in Section 1101-A(3), the Legislature specified certain types of uses other than the actual supplying of utility service which are to be included in the definition of utility realty. We believe the term "useful" in Article VIII, Section 4 of the Constitution of Pennsylvania, in the context of an electrical power plant, includes property which is not used in the actual supply of electricity but used for other purposes in furnishing power, such as manufacturing. *See, Southern Electric Light and Power Co.,* holding that property used for manufacturing of electricity is exempt from local real estate taxation as is property used for supplying electricity.